Frederick H. Winston *et al.*

*v.*

The Dorsett Pipe and Paving Company.

*Filed at Ottawa May 16, 1889.*

1. Corporation—*stockholders*—*of their relation to each other, and to creditors*—*subscribing for stock as "trustee."* After a part of the capital stock of a corporation had been subscribed, and for the purpose of organizing the corporation, one of the subscribers was induced by the others to subscribe for the balance of the stock as trustee, under the agreement that he was not to be assessed on such shares or become liable thereon, but that all should assist him in disposing of such stock: *Held*, that as between such stockholder and the creditors of the company he was liable for such stock, but not to the other stockholders. In such case the fact that he placed the word "trustee" after his name, made no difference in his liability to creditors.

2. Where shares of stock in a corporation are held by a person as trustee for another, the legal holder of the shares, and not the equitable owner, is primarily liable, both to the company and to its creditors.

3. On bill by certain of the stockholders of a corporation for a dissolution, and the assessment of the stockholders on their unpaid stock for the payment of the debts of the company, there is no error in a decree which omits to assess one who subscribed as trustee under an understanding among the stockholders that such trustee stock should not be subject to assessment, when no creditors are injured thereby, and no one of the other stockholders is required to pay any more than he owes on his own stock.

4. Creditors of a corporation are entitled to look to the stock as it appears on the face of the subscription list, and each stockholder has a vested right in the contract for subscription of every other stockholder. But when no creditor is injured thereby, the stockholders may, as between themselves, agree that one of them may be released from liability.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

Messrs. G. W. & J. T. KRETZINGER, and Messrs. PAGE & BOOTH, for the appellants:

No declaration of trust was ever made by Waterman. No *cestui que trust* was ever named. *Clark* v. *Quackenbos*, 27 Ill. 260; *Lantry* v. *Lantry*, 51 id. 458; *Wheeler* v. *Smith*, 9 How. 79; Story's Eq. Jur. sec. 979 a.

A corporation can not deal in its own stock, and any attempt to do so is wholly void in law and equity. *Verplanck* v. *Insurance Co.* 37 Cal. 30; *Mechanic's Bank* v. *Railroad Co.* 13 N. Y. 627; Green's Brice's Ultra Vires, 98.

Any agreement between Waterman and any or all of his co-subscribers, to the effect that his subscription for the $63,-700 as trustee should be only "formal," or that it should be in trust for the proposed corporation, would be in violation of the charter and the provisions of law under which the franchise to be a corporation was granted by the State, and therefore wholly void. *Baile* v. *Educational Society*, 47 Md. 117; *Corwith* v. *Culver*, 69 Ill. 502; *Railroad Co.* v. *Ennor*, 116 id. 55; *Melvin* v. *Insurance Co.* 80 id. 446; *Bavington* v. *Railroad Co.* 34 Pa. St. 358; *Railroad Co.* v. *Biggar*, id. 454.

Upon the face of the subscription, Waterman is personally liable for the $63,700, and this liability can not be changed, or the legal effect of this subscription altered, by parol evidence. *Corwith* v. *Culver,* 69 Ill. 502; *Baile* v. *Educational Society*, 47 Md. 117; *Blodgett* v. *Morrill*, 20 Vt. 514.

As between Waterman and the company, the subscription list or stock books makes him the holder of the legal title, and the sole party against whom a liability for calls or assessments can be enforced in law or in equity. *People ex rel.* v. *Robinson*, 64 Cal. 373.

If the subscription to the $63,700—more than half of the authorized stock—is unavailing, if Waterman did not become responsible therefor, and his estate can not be made to respond in this proceeding thereon, then it conclusively follows that the entire stock was not subscribed, and the other subscribers can only be held liable in this proceeding, if at all, in the same proportion that they would have been liable had the subscription for the $63,700 been without condition, and had created the liability against Waterman for which we contend. *Steamboat Co.* v. *Sewall,* 78 Me. 168, and cases therein cited; *Railroad Co.* v. *Gould.*

By this subscription Waterman created a liability against himself, and in favor of the corporation and all parties in interest, which could not be enforced, at law or in equity, by the corporation or creditors against his unknown *cestuis que trust.* All calls and assessments upon this subscription must have been made against Waterman personally, the legal title being in him.   *Crease* v. *Babcock,* 10 Metc. 545; *Hale* v. *Walker,* 31 Iowa, 352; *Fisher* v. *Seligman,* 75 Mo. 9; *Muir* v. *Glasgow Bank,* L. R. (4 H. L.) 358.

The liability to pay calls attaches to the holder of the legal title only.   *Henkle* v. *Salem M. Co.* 39 Ohio St. 552.

Messrs. Wilson & Moore, for the appellee:

A corporation may own its own stock when there are no creditors.   *Clapp* v. *Peterson,* 104 Ill. 31; *Railroad Co.* v. *Marseilles,* 84 id. 643.

Mr. Justice Magruder delivered the opinion of the Court:

This is a bill filed by the appellant, F. H. Winston, as a stockholder in the Dorsett Pipe and Paving Company, a corporation organized under the laws of this State, against said company, and its creditors, and the other stockholders, all of whom are parties defendant to this proceeding.   The bill seeks the dissolution of the corporation, the appointment of a re-

ceiver, the sale of the corporate assets, the assessment of the shareholders, and the payment of the creditors.

The company was organized in 1881 with an authorized capital of $125,000.00, divided into shares of $100.00 each. Among the original subscribers to the stock, who participated in the organization, were the following persons, whose subscriptions were as follows: F. H. Winston, 50 shares, $5000.00; Joseph Stockton, 100 shares, $10,000.00; M. S. Chase, 100 shares, $10,000.00; I. S. Waterman, 100 shares, $10,000.00; I. S. Waterman, trustee, 637 shares, $63,700.00. Waterman died before the filing of the bill, and his executors were defendants in the court below. The only appellants in this case are F. H. Winston, the complainant, and Stockton and Chase, two of the defendants. The appellees, who are chiefly interested in the controversy, are the executors of Waterman's estate. None of the creditors, and none of the stockholders, except the three appellants, complain of the decree of the Circuit Court.

The decree assesses the whole amount of indebtedness, found to be due, against all the stock, subject to assessment, except that known as the "Waterman trustee stock," amounting originally to 637 shares. It is only this feature of the decree which the appellants complain of. They claim, that the trustee stock should have been made to bear its *pro rata* share of the indebtedness, and that, by the failure of the court below to assess it, along with the rest of the stock, they are compelled to contribute more than their fair proportions towards the discharge of the debts of the company.

The original subscribers to the stock, besides those already named, were D. H. Dorsett, 250 shares, $25,000.00; I. P. Ellacott, 10 shares, $1000.00; F. S. Winston Jr., 3 shares, $300.00. After 613 of the 1250 shares had been subscribed for, there was nobody to take the remaining 637 shares. It was deemed advisable to organize the corporation at once, and to proceed with the business as soon as possible. Under the

statute a certificate of organization could not be obtained from the Secretary of State, until the capital stock should be fully subscribed. Accordingly it was suggested, at the gathering of the original subscribers above named, and while they were engaged in signing their names to the subscription paper, that Waterman, who was the prime mover and chief promoter of the scheme, should subscribe for the 637 shares, as trustee. In pursuance of this suggestion he signed the list: "I. S. Waterman, trustee, 637 shares, $63,700." The caption of the paper, so signed by him and the others, is as follows: "We, the undersigned, hereby severally subscribe, for the number of shares set opposite our respective names, to the capital stock of the Dorsett Pipe and Paving Company, and we severally agree to pay the said company for each share the sum of one hundred dollars."

There is some uncertainty expressed by some of the witnesses as to the persons, for whom Waterman was acting as trustee when he so signed his name. We deem it unnecessary to consider whether he was technically a trustee for the corporation, or for the stockholders, or for the future distributees of the stock. After a careful examination of all the evidence we are satisfied, that there was a definite understanding between him and the other subscribers, as to the purpose for which he took the stock, and as to the nature of the liability, which he assumed thereby. It was understood, that, after the report should be made to the Secretary of State, and the complete organization of the corporation should be effected, Waterman should go to work to dispose of the stock to third parties, and that the other stockholders should help him to so dispose of it. As between him and his co-stockholders, he was not to be liable upon the stock, and was not to be required to pay assessments upon it. It was explained to him and he was fully aware, that, as between him and creditors of the company, he would be held liable upon his subscription for the 637 shares.

D. H. Dorsett testifies: "Am original stockholder in Dorsett Co.; present when original subscription list was signed; I drew it up; saw all sign it; * * * I think all the subscribers were present; * * * think F. S. Winston gave it as his opinion Waterman could safely sign as trustee for the balance of the stockholders; * * * Waterman asked as to his responsibility in signing; was assured, as far as stockholders were concerned, there would be no liability on his part, etc.; it was said that Waterman could take it all if he wanted to, but the understanding was that we were to assist in placing the stock; * * * there was a committee appointed at a subsequent meeting for the purpose of soliciting subscriptions for this trustee stock."

F. S. Winston Jr. testifies: "It was explained that the taking of the stock would create a liability against Waterman, etc.; * * * Did you mean it would create a liability in case creditors intervened? and was not that the reason it was agreed that no debt should be incurred until the stock should be disposed of? Ans. Yes, Sir; that is about it; that is to say, of course, no lawyer could advise a client, in a case like that, that there would be no liability as against outside parties, creditors, etc.; * * * my recollection of the understanding in regard to that was, that the company was to make no calls for assessments as against the stock held as trustee." F. S. Winston also says it was understood, that Waterman could retain, in addition to his individual subscription, so much of the trustee stock as he wanted, and dispose of the balance through the aid of himself, Dorsett, Stockton and the others.

At a full meeting of the board, after the organization of the company, Chase, Stockton and Dorsett were appointed a committee to solicit subscriptions for the balance of this stock remaining undisposed of at that time. Chase, the secretary, says that he, and not Waterman, sold such part of the trustee stock as was sold. Two assessments of ten per cent each were

made upon the stockholders before the Company failed, and, although Waterman, as an individual subscriber, was called upon to pay these assessments, no payment upon the trustee stock was demanded of him.

As between the State and Waterman, he must be regarded as a subscriber for the 637 shares. If he and those associated with him .reported a fictitious or unreal subscription for the trustee stock, they obtained a charter from the State by fraud. There is no evidence of any such intention or design on the part of the gentlemen, who organized this corporation.

As between the creditors of the company and Waterman, he must be regarded as a subscriber for the 637 shares. The fact that he placed the word, "trustee" after his name would make no difference. in his liability to the creditors. "Where shares are held by a person as trustee for another, the legal holder of the shares, and not the equitable owner, is primarily liable both to the company and to its creditors." (2 Morawetz on Corp. sec. 853). Appellees admit that the estate of Waterman is liable to be assessed upon the shares held by him as trustee, if such assessment becomes necessary in order to pay the debts of the corporation. The rights of the creditors in this regard are recognized by the decree of the trial court.

But, in view of the understanding among the stockholders that the trustee stock should not be subject to assessment as between Waterman and the original subscribers, the Circuit. Court, by its decree, makes an assessment against the stock, other than the trustee stock, reserving the right to make further assessments if the same shall be needed. The decree provides that "in case money enough cannot be realized from the assessments upon the stock, which is liable to contribute to and be assessed as aforesaid for the payment of the valid debts and obligations of the said corporation, then the said executors of said James S. Waterman, deceased, shall be required to pay also, upon the said stock taken by James S. Waterman as trustee, such sum as may be necessary to pay said defi-

ciency." The executors are assessed upon the $10,000.00 of stock, subscribed for by Waterman individually.

We cannot see, why, under the facts disclosed by this record, the decree of the court below is erroneous in holding, that the trustee stock should not be assessed primarily and in the first instance, as between these three appellants and the Waterman estate. The decree does not require the appellants to pay more than they owe. Neither of them ever paid his subscription to the capital stock in full. Unpaid subscriptions to the capital stock of a corporation constitute a trust fund, which may be subjected to the payment of the debts, like any other asset. The assessments made by the present decree against the appellants respectively do not exceed, or equal, the several amounts due from them upon their unpaid subscriptions. There is no hardship in requiring them to carry out the arrangement as to the trustee stock, made with Waterman in their presence and with their consent, and of which they reaped the benefit by a speedy organization of the Pipe and Paving Company.

In most of the cases, where subscriptions to the capital stock of corporations have been condemned, as being conditional, or accompanied by secret or qualifying agreements, the rights of creditors or stockholders have been prejudiced. Creditors are entitled to look to the stock as it appears upon the face of the subscription list. Each stockholder has a vested right in the contract for subscription of every other stockholder. In the case at bar, no creditor is injured, and no creditor is complaining. The appellant stockholders cannot object to the release of stock, which they permitted to be subscribed for with the understanding that, so far as they themselves were concerned, it should be released. We are of the opinion that the Appellate Court committed no error in affirming the decree of the Circuit Court.

The judgment of the Appellate Court is, therefore, affirmed.

*Judgment affirmed.*