RUDOLPH GOTTLIEB et al.

*v.*

CHARLES L. MILLER et al.

*Filed at Ottawa October 29, 1894.*

1. PRIVATE CORPORATION—*assets of a quasi trust fund.* The assets of an insolvent corporation are not strictly a trust fund, nor are the officers strictly trustees. At most, the assets are a *quasi* trust fund, and the directors or officers *quasi* trustees, under some circumstances.

2. SAME—*may prefer creditors when insolvent, the same as natural persons.* In the absence of legislation to the contrary, an insolvent corporation may make a preference among creditors, subject to the same restrictions that apply to individual debtors.*

3. SAME—*directors cannot appropriate assets when insolvent.* A judgment note given by an insolvent corporation to secure an account against it, assigned by its directors to a third person having knowledge of the facts, is an appropriation of the assets of the corporation to the use of such directors in preference over other creditors, and therefore invalid.

4. SAME—*receiver estopped to assert fraudulent transfer of goods by his principals.* A receiver of an insolvent firm is estopped to assert, as

*As to validity of preferences among creditors given by insolvent corporations, see note to *Lyons-Thomas Hardware Co.* v. *Perry Stove Manf. Co.* 22 L. R. A. 802.

against the creditors of an insolvent corporation, that property levied upon by the latter's creditors was transferred to it by such firm for the purpose of hindering and delaying creditors of the firm.

5. SAME—*where equities are equal the first levy holds the property.* The creditors of an insolvent firm cannot, as against the *bona fide* creditors of a corporation in which the members of such firm were directors, complain of the fraudulent intermixture of the goods of the firm with those of the corporation, and on that ground apply all the property to the firm debts. There being fraud on both sides, the equities are equal, and the first levy gives prior right.

6. SAME—*rights of creditors of a firm whose members were directors.* Creditors of a firm whose members were directors of a corporation have no standing, in equity, to impeach the conduct of the company, its directors and officers, in making preferences.

*Gottlieb* v. *Miller,* 47 Ill. App. 588, reversed in part.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding.

MORAN, KRAUS & MAYER, for appellants :

When a corporation becomes insolvent, abandons business, and ceases to be a going concern, or when, having become insolvent, it is kept in operation simply that it may continue in apparent business life for the purpose of preferring certain of its creditors, who know its true condition, the preference of creditors chargeable with such knowledge is unlawful, in equity. *Clapp* v. *Peterson,* 104 Ill. 26 ; *Sandoval Mining Co. case,* 116 id. 170 ; *Beach* v. *Miller,* 130 id. 162 ; *Roseboom* v. *Whittaker,* 132 id. 81; *Atwater* v. *Bank,* 40 Ill. App. 501; 152 Ill. 605 ; *Burch* v. *Bank,* 40 Ill. App. 505 ; *State* v. *Brockman,* 30 Mo. App. 131; *Kankakee W. M. Co.* v. *Kampe,* 38 id. 229 ; *Roan* v. *Winn,* 93 Mo. 511; *Richards* v. *Insurance Co.* 43 N. H. 264; *Smith* v. *Lansing,* 22 N. Y. 521; *Hopkins' Appeal,* 90 Pa. St. 69 ; *Haywood* v. *Lumber Co.* 64 Wis. 639 ; *Ballin* v. *Lace Importing Co.* 78 id. 404; *Tank Co.* v. *Varnish Co.* 45 Fed. Rep. 7; *Coons* v. *Tome,* 9 id. 532; *Bradley* v. *Farwell,* 1 Holmes, 433 ; *Corbett* v. *Woodward,* 5 Sawy. 403; *Stout* v. *Yearger Manf. Co.* 13 Fed. Rep. 802;

*Jackson* v. *Ludeling,* 21 Wall. 616; *Wardell* v. *Railway Co.* 103 U. S. 651; *Oil Co.* v. *Marbury,* 91 id.,587; *Thomas* v. *Brownville Co.* 109 id. 522; *Koehler* v. *Insurance Co.* 2 Black, 715; Cook on Stock and Stockholders, (2d ed.) sec. 661, and cases in note.

Directors of an insolvent corporation cannot give security, by way of preference, for debts for which they are themselves liable, as endorsers or otherwise. *Lippincott* v. *Carriage Co.* 25 Fed. Rep. 577; *Adams* v. *Milling Co.* 35 id. 433; *Howe* v. *Tool Co.* 44 id. 231; *Tank Line Co.* v. *Varnish Co.* 45 id. 7; *Atwater* v. *Bank,* 152 Ill. 605.

Here, the receiver, Parker, is an ordinary receiver in chancery, and, as such, represents not only the persons for whose property he was appointed receiver, but their creditors as well. *Holmes* v. *McDowell,* 15 Hun, 592; *Jackson* v. *Lahee,* 114 Ill. 300; Beach on Receivers, sec. 639; *Leopold* v. *People,* 140 Ill. 552.

DUNCAN & GILBERT, for appellee Ignatz Deimel:

The point attempted to be made, that the American Parlor Frame Company, being insolvent, could not give preferences to particular creditors, finds no warrant in the decisions of the courts of this State. The Supreme Court has held the contrary. *Burch* v. *West,* 134 Ill. 258.

·PENCE & CARPENTER, for appellees the executors of Leopold Miller:

An insolvent corporation, in the absence of legislation to the contrary, may, like an individual, make a preference among its creditors. *Catlin* v. *Bank,* 6 Conn. 233; *Boston Co.* v. *Langdon,* 24 Pick. 49; *Russell* v. *McLellan,* 14 id. 63; *Revere* v. *Boston Co.* 15 id. 351; *State* v. *Bank,* 6 Gill & J. 205; *Warner* v. *Mower,* 11 Vt. 390; *Dana* v. *Bank,* 5 W. & S. 223; *Ex parte Conway,* 4 Ark. 348; *United States* v. *Bank,* 8 Rob. 262; *Burr* v. *McDonald,* 3 Gratt. 215; *Town* v. *Bank,* 2 Doug. 530; *Sargent* v. *Webster,* 13 Metc. 497; *Pondville* v. *Clark,* 25 Conn. 97; *Arthur* v. *Banks,* 17 Miss. 394; *Smith* v.

*Lansing*, 22 N. Y. 521; *Stratton* v. *Allen*, 16 N. J. Eq. 229; *Buell* v. *Buckingham*, 16 Iowa, 284; *Ringoe* v. *Biscoe*, 13 Ark. 563; *Dabney* v. *Bank*, 3 S. C. 156: *Graham* v. *Railroad Co.* 102 U. S. 148; *Fogg* v. *Blair*, 133 id. 534; *Reichwald* v. *Hotel Co.* 106 Ill. 439; *Bouton* v. *Smith*, 113 id. 481; *Roseboom* v. *Whittaker*, 132 id. 81; *Burch* v. *West*, 134 id. 258; *Ragland* v. *McFall*, 137 id. 81; *Coats* v. *Donnell*, 94 N. Y. 168; *Glover* v. *Lee*, 140 Ill. 102; *Gould* v. *Railroad Co.* 52 Fed. Rep. 680; 1 Am. Lead. Cases, 95, and cases cited; *Bank* v. *Whittle*, 78 Va. 737; Angell & Ames on Corp. 186; Bump on Fraud. Con. (2d ed.) 385-388; 1 Morawetz on Private Corp. (2d ed.) sec. 802, and cases cited; 2 Pomeroy's Eq. Jur. sec. 1046.

BAKER, J.: On January 10, 1890, the Landowners' Building Company recovered in the Cook circuit court a judgment for $2665.62 against the American Parlor Frame Company and Rudolph, Simon and Joseph Deimel, firm of R. Deimel & Bros. The execution issued thereon was levied on property of the frame company, but without resulting in satisfaction, because prior thereto, on January 7, 1890, two judgments by confession had been rendered in said court in favor of Leopold Miller, against the American Parlor Frame Company, for $10,225 and $3000, respectively, and on January 8, 1890, three judgments had been rendered in the same court, by confession, in favor of Ignatz Deimel, against said frame company, for $7560, $5400 and $4018, respectively, and the sheriff, at the date of the issuance of the execution of the Landowners' Building Company, was already in possession of the property of the frame company under prior executions issued on the judgments of Miller and of Ignatz Deimel, and which executions much more than exhausted all the assets of the frame company.

The first step in the litigation certified to this court in this voluminous record was a bill in equity exhibited in the Cook circuit court by the Landowners' Building Company against the American Parlor Frame Company, Leo-

pold Miller, Ignatz Deimel, Canute R. Matson, sheriff, Rudolph Deimel, Simon Deimel and Joseph Deimel. The bill is a creditor's bill, and it charges conspiracy, and that the judgments in favor of Miller and in favor of Ignatz Deimel are fraudulent and void. By leave of court Thomas Parker, Jr., receiver of the estate and effects of the firm of R. Deimel & Bros., was made a party defendant to the original bill of complaint, and he answered the same, and filed a cross-bill. Next came into the litigation Julius Schmits, the American Oak Leather Company, and a large number of other creditors of R. Deimel & Bros., who intervened by petition, and were made parties co-defendant to the original bill, and co-cross-complainants in the cross-bill of Parker, receiver.

It is not deemed necessary to set out the pleadings herein. Nor is it deemed necessary, for the purposes of the decision, to set out the facts of the case, which are very numerous and very complicated.

At the final hearing in the circuit court a decree was rendered dismissing the bill of the Landowners' Building Company for want of equity, and dismissing the cross-bill of the receiver of R. Deimel & Bros., and of Julius Schmits, the American Oak Leather Company and others, for want of jurisdiction. It was further decreed that the judgments in favor of Leopold Miller be first paid by the receiver of the American Parlor Frame Company, appointed herein, and that the judgments in favor of Ignatz Deimel be next paid. Pending the litigation in the circuit court, Leopold Miller had died, and Charles L. Miller and others had been substituted in his place as co-defendants to the bill and cross-bill. The decree of the circuit court was affirmed in the Appellate Court.

Appellants, in their argument on the facts and the law of the case, make three principal points. The first of these they formulate thus: The American Parlor Frame Company, at the time of the confession of the Miller and the Ignatz Deimel judgments, and before the

giving of the notes on which such judgments were confessed, and for many months prior thereto, was not a going business concern, but was in fact then an insolvent corporation, which had utterly ceased and long since abandoned its business.   We understand that this proposition is admitted by appellees; but whether this be so or not, we find it to be true as matter of fact.

The second of the propositions of appellants runs in this wise:   The conditions of abandonment of business and of corporate insolvency which rendered the American Parlor Frame Company in no sense a going business concern, were well known to Leopold Miller, to Ignatz Deimel, and to the Deimels who were stockholders and officers of the frame company at the time when the judgment notes were given by and accepted from the frame company and when judgments thereon were entered, hence Leopold Miller and Ignatz Deimel cannot be considered, even if *bona fide,* diligent creditors.   It may be well here to remark, by way of explanation, that the frame company was organized by the members of the firm of R. Deimel & Bros.; that its entire capital stock belonged to Rudolph, Joseph and Simon Deimel, who were the sole directors of the company, except one share of the par value of $100, which stood in the name of a traveling salesman of R. Deimel & Bros. for purposes of convenience but which he never paid for, and that Joseph Deimel was president and Rudolph Deimel secretary of the company.   So far as this second proposition states matters of fact, they are correctly stated; so far as it deduces therefrom conclusions of law, it will be more conveniently considered along with the third proposition of appellants.

And this third proposition, on which hinges the *gist* of the controversy herein, is thus stated:   When a corporation becomes insolvent, abandons business and ceases to be a going concern, or when, having become insolvent, it is kept in operation, not as an actually going concern,

but simply that it may continue in apparent business life for the purpose of preferring, by security or payment, certain of its creditors who know its true condition, the preference of creditors chargeable with such knowledge is unlawful, in equity, since it violates the equitable principle that the assets of an insolvent corporation are a trust fund to be divided equally among its creditors, for whom its officers are, in equity, trustees, and to whom persons who take the property of the company from such officers, with notice of the trust, are compellable to account. For the purposes of the present inquiry many of the qualifying phrases found in the proposition as thus formulated may properly be eliminated therefrom, such as, "abandons business," "ceases to be a going concern," "is kept in operation," "actually going concern," "apparent business life," "who know its true condition," and "chargeable with such knowledge." These matters so eliminated may be of importance in this suit so far as the supposed cause of action is based on the charge of fraud in fact, but it seems to us that they are of importance no further than that.

The proposition refers to the assets of an insolvent corporation as a "trust fund," and to the officers of the corporation as "trustees." This is not strictly accurate. The supposed trust does not fall within the definition of either an express trust, an implied trust, a resulting trust or a constructive trust. 1 Perry on Trusts, (2d ed.) secs. 24-27, inclusive. At most, the assets of a corporation are, under some circumstances, a *quasi* trust fund, and the directors or officers of the corporation, under some circumstances, *quasi* trustees. In 3 Pomeroy's Equity Jurisprudence (sec. 1089) it is said: "The directors and supreme managing officers of corporations are constantly spoken of as trustees. They are not, however, true trustees, with the corporation or the stockholders as their true *cestuis que trustent,* since they hold neither the legal title to the corporate property nor that to the

stock. In fact, directors are clothed, at the same time, with a double character,—that of *quasi* trustees and that of agents. It is of the utmost importance to discriminate exactly between these two characters, and to determine accurately for whom, over what subject matter and to what extent they are thus trustees." Pomeroy further says (vol. 2, sec. 1046): "By analogy, courts regard partnership property, after an insolvency or dissolution of the firm and in the proceeding for winding up its affairs, as a trust fund for the benefit of the firm's creditors; and the capital stock and other property of private corporations, especially after their dissolution, is treated as a trust fund in favor of creditors. These statements may be sufficiently accurate as strong modes of expressing the doctrine that such property is a fund sacredly set apart for the payment of partnership and corporation creditors before it can be appropriated to the use of the individual partners or corporators, and that the creditors have a lien upon it for their own security; but it is plain that no constructive trust can arise in favor of the creditors unless the partners or directors, through fraud or a breach of fiduciary duty, wrongfully appropriate the property and acquire the legal title to it in their own names, and thus place it beyond the reach of creditors through ordinary legal means."

A natural person has absolute dominion over the disposition of his own property. It follows from this, that an insolvent debtor, in the absence of any intention to hinder, delay or defraud his other creditors, has the right to prefer one creditor over all others, even if the preference exhausts his whole estate. Such is the rule in this State, and it has been the rule for so long a time, and has been announced in so many cases, that it is wholly useless to cite any authority in that behalf. Blackstone, in his Commentaries, (book 1, *475,) says that it is necessarily and inseparably incident to every corporation aggregate that it has power to sue or be sued, implead or

be impleaded, grant or receive, by its corporate name, and do all other acts as natural persons may. And in Angell & Ames on Corporations (sec. 187, p. 158,) it is said that, independently of positive law, all corporations have the absolute *jus disponendi*, neither limited as to objects nor circumscribed as to quantity. Why, then, may not an insolvent corporation, like an insolvent natural person, in the absence of legislation to the contrary, make a preference among its creditors?

Morawetz, in his treatise on the Law of Private Corporations, (chap. 10, sec. 582,) says that it is generally considered to be a settled rule of law that a corporation has the same power of making preferences among its creditors that an individual has. In *Ragland* v. *McFall*, 137 Ill. 81, we held that it was competent for the insolvent corporation (the River Rendering Company) to prefer the wife of the president of the company, and turn its property over to her in payment of her debt, in good faith, and in the absence of any evidence of a fraudulent purpose. In *Reichwald* v. *Commercial Hotel Co.* 106 Ill. 439, we held that a corporation, like a private individual, independently of any positive law to the contrary, may turn out a part or the whole of its property in payment of its debts, and in doing so may prefer creditors, if done in good faith and not for a fraudulent purpose. To the same effect is the late case of *Warren et al.* v. *First Nat. Bank of Columbus*, 149 Ill. 9. And we held the same doctrine in *Bouton* v. *Smith*, 113 Ill. 481, in *Burch* v. *West*, 134 id. 258, and in *Glover* v. *Lee*, 140 id. 102. In all of these cases the corporations were insolvent. In *Fogg* v. *Blair*, 133 U. S. 534, the Supreme Court of the United States say that the doctrine that the property of a corporation is a trust fund for the payment of its debts, only means that the property must first be appropriated to the payment of the debts of the company before any portion of it can be distributed to the stockholders, and that it does not mean that the property is so affected by the indebt-

edness of the company that it cannot be sold, transferred or mortgaged to *bona fide* purchasers for a valuable consideration, except subject to the liability of being appropriated to pay that indebtedness, and that such a doctrine as this latter has no existence.   The cases of *Richardson* v. *Green*, 133 U. S. 30, *Smith Purifier Co.* v. *McGroarty*, 136 id. 237, and *Wabash, St. Louis and Pacific Railway Co.* v. *Ham*, 114 id. 587, are to the same effect.   See, also, *Graham* v. *Railroad Co.* 102 U. S. 148.   In *Roseboom et al.* v. *Whittaker et al.* 132 Ill. 81, we held that the creditor of an insolvent corporation may, by attachment or execution, acquire a specific lien upon its property, which will entitle him to a preference over other unsecured creditors, but that after a court of equity has once acquired jurisdiction of the assets of the corporation it will be exclusive, and that ordinarily no creditor can then pursue a legal remedy in such a way as to obtain for himself a preference.

That the doctrine that we have so frequently held, and that we are here so strenuously urged to change or modify,—that in the absence of legislation an insolvent corporation may make a preference among creditors, subject to the same restrictions that apply to individual debtors,—is in accord with the great weight of authority is indicated by the following list of cases in which like doctrine is announced :   *Catlin* v. *Eagle Bank*, 6 Conn. 233 ; *Russell* v. *McLellan*, 14 Pick. 63 ; *Revere* v. *Boston Co.* 15 id. 351; *Boston Co.* v. *Langdon*, 24 id. 49 ; *Pondville* v. *Clark*, 25 Conn. 97; *State* v. *Bank of Maryland*, 6 Gill & J. 205 ; *Warner* v. *Mower*, 11 Vt. 390 ; *Ex parte Conway*, 4 Ark. 348 ; *Ringoe* v. *Biscoe*, 13 id. 563 ; *Dana* v. *Bank of U. S.* 5 Watts & S. 223 ; *United States* v. *Bank of U. S.* 8 Rob. 262 ; *Burr* v. *McDonald*, 3 Gratt. 215 ; *Bank* v. *Whittle*, 78 Va. 737; *Town* v. *Bank of River Raisin*, 2 Dougl. 530 ; *Bank* v. *Salt and Lumber Co.* 90 Mich. 345 ; *Sargent* v. *Webster*, 13 Metc. 497; *Arthur* v. *Banks*, 17 Miss. 394; *Smith* v. *Lansing*, 22 N. Y. 521; *Coats* v. *Donnell*, 94 id. 168 ; *Stratton* v. *Allen*, 16 N. J. Eq. 229 ; *Buell* v. *Buckingham*, 16 Iowa, 284; *Dabney* v. *Bank*,

3 S. C. 156; *Gould* v. *Little Rock Railroad Co.* 52 Fed. Rep.
680.

Some few authorities are cited by counsel that appar-
ently announce a contrary doctrine. We are not inclined
to follow them, and especially so in view of our former
decisions.

It was not error in the circuit and Appellate Courts to
hold that the American Parlor Frame Company had the
right to secure Leopold Miller and Ignatz Deimel in pref-
erence to the other creditors of the company.

In respect to the three judgments of Ignatz Deimel
and the judgment of Leopold Miller for $3000, and the
other judgment in his favor, so far as it was based on the
note for $4207.35, we think the record shows no fraud,
either in fact or in law. But to the extent that the judg-
ment in favor of Leopold Miller for $10,225 was based
upon the note for $6000, we think it was a fraud upon the
rights and interests of the other creditors of the Ameri-
can Parlor Frame Company. The history of that note is,
in substance, as follows: On January 2, 1890, the Ameri-
can Parlor Frame Company was wholly insolvent and for
a long time had been in that condition. Rudolph, Simon
and Joseph Deimel, who composed the firm of R. Deimel
& Bros., were the directors of the company and the own-
ers of its stock, and Joseph Deimel was the president and
Rudolph Deimel the secretary of the company. Its in-
solvency was well known to them and to each of them,
and it was also well known to Leopold Miller. On the
date mentioned, the company was indebted to R. Deimel
& Bros. in a sum exceeding $28,300. At the same time
R. Deimel & Bros. were indebted to one Charles H. Schwab
on their two notes of $2994.28 each, and Leopold Miller
was guarantor on said two notes. Miller paid them off.
On said January 2, 1890, R. Deimel & Bros. made an
equitable assignment of $6000 of their account against
the frame company to Leopold Miller. Said assignment
was as follows:

"CHICAGO, *Jan 2, 1890*.

"American Parlor Frame Co., in acc't with R. Deimel & Bros., Nos. 381–387 Wabash Ave.—1890, Jan. 2.—On acc't, $6000.

"For value received we hereby sell and assign $6000, being part of our claim against the American Parlor Frame Co., to Mr. L. Miller.      R. DEIMEL & BROS.

"Accepted: American Parlor Frame Co.—Joseph Deimel, Pt."

And on the same day the insolvent American Parlor Frame Company, in consideration of the assigned account of $6000, gave to Leopold Miller a demand judgment note for $6000, dated January 2, 1890, payable to the order of Miller, and signed, "The American Parlor Frame Company, by Joseph Deimel, president, Rudolph Deimel, secretary," with the seal of the company attached.

In *Beach* v. *Miller*, 130 Ill. 162, this court held that the directors of an insolvent corporation cannot give away its assets or use them to exonerate themselves, to the injury of the other creditors, and that if any of the directors are creditors of the corporation they cannot secure any advantage or preference in the payment of their claims at the expense of other creditors. The same doctrine has been since held in *Roseboom* v. *Whittaker*, 132 Ill. 81, and in other cases. In such case, as distinguished from the case where the directors apply the assets of the insolvent corporation to the payment of a debt due a third person, there is a trust. This is in accord with the doctrine we have already quoted from section 1046 of 2 Pomeroy's Equity Jurisprudence, where it is said : "It is plain that no constructive trust can arise in favor of the creditors unless the partners or directors, through fraud or a breach of fiduciary duty, wrongfully appropriate the property, and acquire the legal title to it in their own names, and thus place it beyond the reach of creditors through ordinary legal means." In the case at bar, the

effect of that which was done in regard to the $6000 was
to enable the directors and managing officers of the in-
solvent corporation to wrongfully appropriate $6000 of
its assets to their own use, by way of preference over the
other creditors of the company. A court of chancery
will not permit them to do indirectly that which it is
unlawful for them to do directly. Leopold Miller took
under the assignment with full notice of the rights and
equities of the other creditors of the corporation, and also
with full notice of the tortious conduct of the directors
and managing officers of the company. He, then, stood
in their shoes, and, of course, since his decease his execu-
tors stand in his shoes.

It follows from the premises that it was error in the
circuit court to decree that this $6000, and the interest
thereon, should be first paid by the receiver out of the
funds in his hands, and also error to decree that the
bill of complaint of the Landowners' Building Company
should be dismissed for want of equity. The Appellate
Court likewise erred in affirming these portions of the
decree.

The cross-bill of Parker, receiver of the estate of
R. Deimel & Bros., was properly dismissed. The claim
that the property levied upon was in part property that
R. Deimel & Bros. had nominally transferred to the Ameri-
can Parlor Frame Company for the purpose of hindering
and delaying their creditors, is one which the receiver of
R. Deimel & Bros. cannot be permitted to assert. The
receiver succeeded to no greater rights than the Deimels
had, and can assert no claim which they themselves could
not have asserted had no receiver been appointed. (*Repub-
lic Life Ins. Co.* v. *Swigert,* 135 Ill. 150.) The Deimels being
estopped from setting up their own fraud, their receiver
is likewise estopped.

Nor was it error to dismiss the cross-bill as to the asso-
ciated cross-complainants, Julius Schmits, the American
Oak Leather Company and other creditors of R. Deimel

& Bros.   The creditors of R. Deimel & Bros. can not, as against the *bona fide* creditors of the American Parlor Frame Company, complain of the fraudulent intermixture of the merchandise of R. Deimel & Bros. with that of the frame company, and claim, because of such intermixture, a right to apply all the property of the frame company to the payment of R. Deimel & Bros.' debts. If it was a fraud on the part of R. Deimel & Bros., as against their creditors, to mix their merchandise with that of the American Parlor Frame Company, it was likewise a fraud by that company upon its creditors to make such admixture.   In such case the equities of the creditors of the corporation are equal to those of the creditors of the firm, and, the equities being equal, the first levy gives the prior right.   Besides this, they being creditors of the firm of R. Deimel & Bros., and not creditors of the American Parlor Frame Company, they have no standing, in equity, to impeach the conduct of the company and its directors and officers.   It is not their concern to move to set aside the Miller and the Ignatz Deimel judgments.

The decree dismissing the cross-bills of Thomas Parker, Jr., the receiver, Julius Schmits, the American Oak Leather Company and others is affirmed.   The decree dismissing the bill of the Landowners' Building Company is reversed, as is also the decree distributing the funds in the hands of the receiver herein.   The cause is remanded to the circuit court, with directions to enter a decree upon the original bill, as amended, that will be in conformity with the views herein expressed.   The cross-complainant and the associated cross-complainants will pay the costs upon the cross-bill.   The executors and representatives of Leopold Miller, deceased, will pay the costs of this appeal made upon the original bill.

*Decree affirmed in part and reversed in part.*