### George W. Ross, Assignee, etc., v. Carl E. Sayler et al.

1.   CORPORATIONS—*May Sell Their Stock.*—It is well established that a corporation may sell its stock at such price as seems to it proper, if by so doing it does not prejudice its creditors or stockholders.

2.   SAME—*Scope of Assignee's Powers.*—An assignee of a corporation can assert no right that the corporation could not.

3.   SAME—*Question of Abuse of Power Can Not be Raised Collaterally.*—The question of an abuse of the power of the corporation is one which the State may raise in a direct proceeding in behalf of the people, but it can not be raised by the corporation or its assignee collaterally.

4.   SAME—*May Make Contracts with Promoters.*—A corporation may make contracts with promoters to pay them for services in procuring sales of its stock.

5.   SAME—*Bound by Acts of Duly Authorized Agents.*—A corporation is bound by a contract made by its duly authorized agents, its directors, with full knowledge of what they were doing, however fraudulent the contract may be in its operation, after it has been fully executed by the parties to it.

6.   ASSIGNMENT FOR THE BENEFIT OF CREDITORS—*Prior Fraudulent Transfers by Assignor.*—A general assignment for the benefit of creditors does not pass to the assignee any interest in property before fraudulently transferred by the assignor, nor any right to impeach or set aside such fraudulent transfer, such right belonging to the creditors only.

7.   SAME—*Powers of Receiver or Assignee.*—So far as the powers of a receiver, or assignee, which are substantially the same, are derived from a statute, or from a lawful decree of court, and do not involve rights which, at the time of his appointment, were vested in the owners, he is not merely their representative, but is the instrument of the law, and the agent of the court which appointed him.   Such right and authority as the law and the court rightfully give him he possesses, and in respect to such right he is not   circumscribed and limited by the right which was vested in and available to the owners.

8.   INSOLVENCY—*Assets Fraudulently Placed Beyond Reach of Law.*

—An assignee or receiver can not, as the representative of the insolvent, reach assets of the insolvent which equitably should be subjected to the payment of his debts, but which have been fraudulently placed beyond reach of law.

**Bill to Declare Void a Contract of a Corporation with Promoters.**
—Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed October 27, 1902.

**Statement.**—December 6, 1896, the appellant, as assignee of the Woman's Baking Co., a corporation organized under the laws of Illinois, filed a bill against the appellees, Sayler, Thain and Niver, to which a general and special demurrer of all the appellees was interposed and sustained by the chancellor. The bill was subsequently amended, the baking company being made a co-complainant, and amendments made to the amended bill, among others, dismissing as to the baking company, and subsequently making it a defendant. A demurrer of all the appellees was sustained to the bill as finally amended, and the bill, as thus amended, dismissed for want of equity. From this decree this appeal is prosecuted.

The bill as amended is of great length, the abstract thereof covering twenty-nine printed pages. In substance it shows that in 1891 the defendants, the appellants above named, conspiring to defraud the public and especially women, determined to form a baking company, sell the stock thereof to women, control the company and appropriate to themselves a large part of the money obtained from *bona fide* purchasers of the stock, and that they carried out this conspiracy; that they interested in the organization of the company a number of women, naming them, to whom they made certain false and fraudulent representations, (which are specifically set out,) and induced the said women to enter into an agreement with appellees to pay to appellees for their services as promoters of the company, fifty per cent upon all amounts received by the company for stock sold by appellees; that these women should become officers and directors of the company and do what they

could to carry out the plan; that pursuant to this arrangement they proceeded to organize the corporation with a capital stock of $250,000 in 10,000 shares of $25 each; the appellee Sayler subscribing for two shares of stock, Thain five shares, Niver five shares, and the several women in question from one to ten shares each, except Lydia R. Bentley, who subscribed for 9,968 shares, the whole stock subscriptions being made by appellee and the women referred to; that said Bentley at that time was financially unable to perform her contract of subscription, and did not expect or intend to do so, but only made it as agent or trustee of the corporation by the advice and procurement of the appellees and upon the understanding that as soon as the company was organized she should be released therefrom; all of which was known to the appellees and the other women, except Hood, Kollack and Blye, who were each subscribers for one share of stock; that all of the women above named, except Blye, were made officers and directors of the company, and with the exception of certain changes set out in the bill, remained such officers and directors and became the confederates or dupes of the appellees.

A bill further alleges, in substance, that the appellees having gained control of the corporation, as aforesaid, caused to be passed by the directors a resolution, by which the stock subscribed by Bentley was stated to have been subscribed as trustee for the company, covered the same into the treasury to be held as treasury stock for the benefit of the corporation, and at the same meeting the appellees caused said directors to make an agreement with them, and subsequently the said directors, the confederates of appellees, and by collusion with them, caused a contract to be entered into between the corporation and appellees, pursuant to said agreement, by which the latter were appointed sole agents of the corporation to sell 7,960 shares of its said treasury stock at par, only to women, and to pay to appellees a compensation equal to fifty per cent upon all amounts received by the corporation for stock sold by appellees; that said contract was subsequently modified so that it pro-

vided that said compensation of appellees should be for promoting and advertising the company, for office expenses, for which they were to receive twenty-five per cent, and for securing the right to use certain patents for bread making machinery, and for such additional services and outlays they were to receive a further compensation equal to twenty-five per cent on all amounts received by the company for stock sold by them; that this change in the contract was fraudulently made, the details of which are set up in the bill; that the appellees proceeded to advertise the stock of the company, the details of their proceedings in this regard being set up in the bill, all strongly tending to show false and fraudulent representations by appellees, and by which they succeeded in selling and collecting for 7,908 shares of the stock of the company in cash or by notes more than $197,750, one-half of which appellees received either in cash or in notes of the company, which were caused to be executed by the directors, at the dictation of appellees, and upon their promise that they would allow the company a bonus of twenty-five per cent; that the appellees paid to their confederates upon the board, from time to time, large sums of money, the amount of which payments were unknown to appellant, on the pretext and pretense that the payments were made for commissions on sales of stock made by the directors.

The bill further alleges that all said acts of the directors were fraudulently done in pursuance of a deliberate scheme of appellees and said directors to cheat and defraud prospective shareholders of the company, and to cheat and defraud persons who might become its creditors; that by said fraud and extravagant salaries and mismanagement, the company became financially embarrassed, unable to meet its liabilities, and ceased to do business on August 8, 1894; at that time being unable to pay an execution against it, the company made a voluntary assignment, pursuant to the statute, to appellant, for the benefit of its creditors, the deed of which was duly recorded, and appellant qualified as such assignee, and that such assignment proceedings are still

pending; that no property came to the hands or possession of appellant; that there are unsatisfied judgments against the company and money claims which have been presented to appellant as assignee; that appellant has no assets of the company out of which to pay said claims, except the claim sought by this bill to be enforced against the appellees.

The bill prays for answer, that said contract and its attempted modification referred to may be declared null and void, and that appellees be decreed to account for and turn over to appellant all moneys received by them, as herein above stated, and for general relief.

George Burry, attorney for appellant.

Ullmann & Hacker, attorneys for appellees.

Mr. Justice Windes delivered the opinion of the court.

For appellants it is claimed that the Woman's Baking Co. had no power to make the contract between it and appellees for the sale of its stock, and pay them for such sale fifty per cent of the proceeds, and in any event that such contract was an abuse of the power of the corporation and could not be ratified; also, that the appellees, knowing all the circumstances which made such contract an abuse of power at the time it was made, there could be no estoppel as to the corporation or its assignee.

It is said also, in support of the first proposition, that said contract is void, because it contemplated a violation of the statute, which required all stock in good faith to be subscribed for before the organization of the corporation.

Many authorities are cited in support of the first proposition of counsel, but after careful consideration of them we are of opinion that they do not sustain his contention. It seems unnecessary to review them. Counsel in his brief concedes that the corporation was legally organized. He says "the legal existence of the corporation is expressly admitted." In view of this admission he can not be heard to say, as he claims, that the stock was not in good faith subscribed before the corporation was organized. To constitute a legal corporation, that is necessary.

That a corporation may sell its stock at such price as seems to it proper, is well established, if by so doing it does not prejudice its creditors or stockholders. Union, etc., Ins. Co. v. Frear S. M. Co., 97 Ill. 537–47; Winston v. Dorsett P. & P. Co., 129 Ill. 64–68; Bouton v. Dement, 123 Ill. 142–8.

Neither creditors nor stockholders are here complaining, and we therefore hold that as to the corporation and its assignee, which can assert no right that the corporation could not (Weir v. Mowe, 182 Ill. 444–50, Republic L. I. Co. v. Swigert, 135 Ill. 150, and Weill v. Zacher, 92 Ill. App. 296, and cases cited), said contract was within the power of the corporation to make, and binds both it and its assignee.

As to the claim that the contract was an abuse of the power of the corporation, it is sufficient to say, that is a question which the state may raise in a direct proceeding in behalf of the people, but not by the corporation or its assignees collaterally, as is here sought to be done. Rector v. Hartford Dep. Co., 190 Ill. 380–9, and cases cited; Chicago Gen. Ry. Co. v. Chicago City Ry. Co., 87 Ill. App. 17–25 and cases cited; same case affirmed in 186 Ill. 219–23.

In the last case the Supreme Court say that the abuse of chartered powers " concerns only the public." In Darst v. Gale, 83 Ill. 136–40, Mr. Justice Scholfield delivering the opinion, the court, in speaking on this question, say : " It makes no difference in this respect whether it is interposed for or against a corporation." The same language is quoted with approval in Alexander v. Tolleston Club, 110 Ill. 66–73.

But if we are wrong in our conclusion that the corporation, through its assignee, can not, in this proceeding, be heard to claim the invalidity of its contract with appellees because of the alleged abuse of its corporate power, still we are of opinion that there was in fact no abuse of power in making the contract in question. A corporation may make contracts with promoters to pay them for services in procuring sales of its stock. Rockford Co. v. Sage, 65 Ill. 328, 332; R. R. Co. v. Christy, 79 Pa. St. 54–59; Stanton v. R. R. Co., 59 Conn. 273; Bruner v. Brown, 139 Ind.

600–2, and cases cited; 5 Thompson's Com's on Corpns., Sec. 5832; R. R. Co. v. Clarkson, 7 Ind. 595.

At most, the contract set out under the allegations of the bill, which must be taken as true for the purposes of this decision, is an unlawful one, and operates as a fraud perpetrated upon the corporation, its stockholders and creditors, by its directors and the appellees; but inasmuch as the corporation acts by its directors, and the contract had been fully executed by the parties to it long before the assignment, however fraudulent the contract may be in its operation, the corporation, having acted by its duly authorized agents, its directors, with full knowledge of what they were doing, is bound thereby, and, as we have seen, its assignee has no greater right than the corporation. McNulta v. Corn Belt Bank, 164 Ill. 427–51; Darst v. Gale, 83 Ill. 137–41; Hanford Oil Co. v. First Nat. Bank, 126 Ill. 584–90; Republic L. I. Co. v. Swigert, 135 Ill. 150–165; Hinkley v. Reed, 182 Ill. 440–43; Weill v. Zacher, 92 Ill. App. 296–9, and cases cited.

In the Swigert case (p. 165), the court say :

" It is a rule of extensive prevalence, that a general assignment for the benefit of creditors does not pass to the assignee any interest in property before fraudulently transferred by the assignor, nor any right to impeach or set aside such fraudulent transfer, such right belonging to the creditors only. * * * The assignee, under the above doctrine, is not the representative of creditors, but the agent of the assignor for the distribution of the property assigned. * * * Any interest in property before fraudulently transferred by the assignor was not assigned to the assignee."

In the Hinkley case (p. 443) the court say :

" It is well settled that a general assignment for the benefit of creditors does not pass to the assignee any interest in property before fraudulently transferred by the assignor, nor any right to impeach or set aside such fraudulent transfer. Such right belongs to the creditors alone."

To the same effect is the Weill case, which cites many authorities.

In support of the right of the assignee to maintain this bill, especial reliance seems to be placed by counsel of

appellant upon the recent case of Peabody v. Water Works Co., 184 Ill. 625, but we think that case is clearly distinguishable from the one at bar, in that the fraud relied on in that case took place long after the appointment of the receiver and after the assets of the insolvent had come to his hands, and tended to prejudice and diminish the insolvent estate, which the receiver was at the time closing up. The case is clearly distinguished by these facts from the Swigert case, *supra*, in which it was said, speaking of the powers of a receiver, which are held to be in substance the same as that of an assignee (Young v. Stevenson, 81 Ill. App. 40-7; Weill v. Zacher, 92 Ill. App. 296-9, and cases cited, including Gottlieb v. Miller, 154 Ill. 44-56):

" So far as his powers are derived from a statute, or from a lawful decree of court, and the powers do not involve rights which, at the time of his appointment, were vested in such owners, he is not merely their representative, but is the instrument of the law, and the agent of the court which appointed him. Such right and authority as the law and the court rightfully give him he possesses, and in respect to such right he is not circumscribed and limited by the right which was vested in and available to the owners."

In the Weill case we said :

" An assignee or receiver can not, as the representative of the insolvent, reach assets of the insolvent which equitably should be subjected to the payment of the insolvent's debts, but which have been fraudulently placed beyond reach at law."

We have reached the conclusion that the appellant can have no relief in this case with great reluctance, and after full consideration of the able and extended arguments of appellant's counsel. We are not without doubt as to its correctness. There seems to have been perpetrated a most outrageous fraud upon the creditors and certain stockholders of this corporation, but relief therefrom can not, in our opinion, be obtained through the assignee in this case. Other questions presented need not be discussed, since the views expressed are decisive of the appeal.

The decree of the Superior Court is therefore affirmed.