## John H. Potter for use of Frederick K. Root, Appellee, v. Sterling Vehicle Company, Appellant.

### Gen. No. 17,071.

1.  BROKERS—*commissions on sale of stock.* In an action for commission on the sale of stock of a corporation, where the company has voluntarily accepted from the purchaser of such stock a note as part payment and afterwards renewed the note and sold the second note for less than its face value without consulting the agent, even though commission was not payable until such stock should be paid for, the company is not in position to treat the returns from the note as anything less than its face value, as far as its obligation to the agent is concerned.

2.  BROKERS—*commissions on treasury stock sold for less than par.* Where a corporation has accepted less than par on a sale of its treasury stock, and a continued liability may therefore exist on the part of the purchaser for the unpaid balance, an agreement to pay a commission for the sale on such terms is not therefore against public policy, void and unenforceable, as neither the subscription nor the stock is void, and the question is primarily one between the purchaser and the creditors of the corporation and at most between the company and its creditors and stockholders.

3. CORPORATIONS—*employment of broker.* A contract by an agent of a corporation employing a broker for the sale of stock may be properly found by the jury to have been ratified when the corporation issued its vouchers in payment for a portion of the broker's services, and letters are written by the corporation by its president and by its attorney admitting the employment but contesting the time for payment.

Appeal from the Municipal Court of Chicago; the Hon. JOHN W. HOUSTON, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed March 4, 1913.

CASSODAY, BUTLER, LAMB & FOSTER, for appellant.

WILLIS E. THORNE and ALVIN W. WISE, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an appeal from a judgment of the Municipal Court in a case of the first class. The judgment was for $1,800 and was entered on the verdict of a jury finding the issues in the case in favor of the plaintiff and assessing the damages at that amount.

The ground of the action was a claim which John H. Potter, the nominal plaintiff, had assigned to Frederick K. Root, the beneficial plaintiff, before the beginning of the suit.

This claim was for compensation under a special contract made by the defendant, the Sterling Vehicle Company, with the plaintiff, John H. Potter, to pay him twenty per cent. of the amount which he should realize on sales of the capital stock of the defendant company. Said sales were to be made for said company and were of its treasury stock, so-called. The plaintiff alleges that he sold twelve hundred shares of said stock, the par value of which was $12,000, and that the Company issued said stock to the vendee, one Pierce, and received therefor $10,000—$1,000 in cash and $9,000 in a promissory note, which the company afterward sold to one Wilkinson, a vice-president and director of the company. Potter was paid by the Company $200 on

account of his commissions in two checks for $100 each on April 15, 1909, and April 27, 1909, but payment of the remainder of the $2,000 claimed by him was refused by the Company, in consequence of which refusal he brought suit with the result before indicated.

It is assigned for error and argued by appellant in this court, that the verdict is against the weight of the evidence, and two propositions are chiefly urged and insisted on as furnishing ground for this assertion:

*First,* that the alleged contract with Potter was made for the corporation by an agent who had no authority to make it, and whose want of authority the plaintiff had notice of or was bound at least on his peril to ascertain; and *Second,* that the contract for the sale by the Company of its own stock of the par value of twelve thousand dollars for ten thousand dollars, was a contract against public policy and void, and that therefore the plaintiff could not recover commissions on the sale as claimed.

Our discussion of the judgment attacked is simplified by the admission of the defendant in argument, that "there is no doubt but that Mr. Potter, appellee, earned the amount here in suit, and that he should receive the same." It is added, however, that he should receive it, not from the defendant company, but from one McCord, who, when the first conversation between him and the plaintiff concerning sale of stock of the defendant occurred, was the general manager of the company, but at the time the alleged contract for commissions on sales of stock was entered into, was the general sales agent of the Company.

The appellee disclaims the position imputed to him by the appellant that McCord, either as general manager or general sales agent of the corporation, had implied power to sell its shares of stock or make the alleged contract of employment with the appellee, but asserts that the evidence shows not an implied but an express authority to McCord to make the contract in

question, and that said contract was in fact "authorized, assumed and ratified" by the defendant company.

We think the evidence on which the jury evidently acted certainly did tend strongly to support this proposition. It was a question of fact for the jury whether this authorization and ratification existed, and we think they were justified in finding that they did. McCord's testimony indeed was to the effect that he treated with Mr. Potter personally and not in behalf of the Company at all, but Mr. Potter contradicts this and is corroborated by the documentary evidence, first, of the direct vouchers to Potter from the Company for $200, on account of these commissions, vouchers approved by Seward, the treasurer; second, of a letter signed by the Company by the hand of its president, to Mr. Potter, after the sale was made, saying to him: "It was definitely understood that you were not to receive payment for your commissions until all of the money was paid into the treasury on any subscriptions taken by you," and that this statement was verified by Mr. McCord, "who made this arrangement with you," and by Mr. J. A. Brown, one of our directors, who was present; and, third, of a letter from the lawyers for the Company, expressly admitting the liability of the Company to Potter for commissions "as soon as the purchase price of the stock is paid." "We understand," the letter proceeds, "that $9,000 is still owing on account of the purchase price, but is not yet due. The agreement with Mr. Potter was that his commissions should not be paid until the purchase price was paid." This letter was dated June 18, 1909. On that date Mr. Pierce had paid to the Company $1,000 in cash on account for his stock, and owed, under a written agreement of subscription, $9,000 more. For this on July 21, 1909, at which date stock was issued to him, he gave a four months' note to the Company, which was renewed by a note for the same amount, due in three months, dated November 22, 1909. This last note was sold by the Company to Wilkinson, its vice-president

and a director, on December 6, 1909. This suit was brought December 15, 1909. We think the jury were justified in holding the contract of employment and for compensation, if not made, at least fully assumed and ratified, by the Company.

In the transaction of December 6, 1909, between the Company and Wilkinson, $7,200 only was covered into the treasury of the Company, and this, with $1,000 previously received in cash from Pierce, made the Company's receipt from the stock in question but $8,200, twenty per cent. of which would be $1,640. As Potter had already received $200 when this suit was brought, the appellant contends that if anything was due from the Company to him at that time, it could at the best be but $1,440, instead of $1,800, the amount of the judgment which he obtained. We do not think this follows. The indebtedness of $9,000 was due to the Company. It voluntarily took a four months' note from Potter for it on July 22nd (at which time Pierce swears he was solvent), renewed that note for three months longer, and sold the second note—all without consulting Potter. We think that it is not in a position to treat the returns from the note as anything less than its face, so far as its obligation to Potter is concerned. But beyond this, it appears that McCord negotiated the sale of the note for the Company, and the implication of other evidence is that McCord claims the difference between the $9,000 and $7,200 as a commission for himself, and that it is held "as a credit" somewhere to await a final adjustment of all claims against the Company on account of the sale of this Pierce stock. But however that may be, it is not the affair of Potter if his claim is otherwise valid.

The contention of the appellant is untenable, that because of the invalidity as against creditors of the Sterling Vehicle Company, of the sale of its treasury stock at less than par, and the continued liability which might therefore exist on the purchaser or subscriber for treasury stock in this case, for the $2,000 neces-

sary to make the 1,200 shares full paid—an agreement of the Company to pay a commission for the sale of treasury stock on such terms is void and unenforceable. Neither the subscription nor the stock is void, still less an agreement between the Company and its selling agent. The question primarily is between the purchaser and the corporation's creditors, and at most between the Company and its creditors and stockholders. This is abundantly settled by decisions in Illinois. Union Mut. Life Ins. Co. v. Frear Stone Mfg. Co., 97 Ill. 537; Bouton v. Dement, 123 Ill. 142; Higgins v. Lansingh, 154 Ill. 301; Parmelee v. Price, 208 Ill. 544; Ross v. Sayler, 104 Ill. App. 19.

The judgment of the Municipal Court is affirmed.

*Affirmed.*