## MARSHALL W. WEIR, Assignee,

*v.*

## RICHARD MOWE *et al.*

*Opinion filed October 16, 1899—Rehearing denied December 13, 1899.*

1. VOLUNTARY ASSIGNMENTS—*county court has exclusive jurisdiction in voluntary assignments.* The county court has, under the Voluntary Assignment law, exclusive jurisdiction to control the application of the assets of an insolvent estate to the payment of claims, and a decree of the circuit court ordering payment of a claim by the assignee as a preference is not of binding force.

2. SAME—*when general creditors are not bound, by decree awarding preference, to particular claim.* A decree awarding a specified claim preference in the settlement of an assigned estate is not binding upon the general creditors of the assignor where they were not made. parties to the proceeding, although both the assignor and the assignee appeared.

3. SAME—*general creditors are not privies of assignor or assignee.* The general creditors of an assigned estate are not privies of the assignor or assignee, so as to be bound by a decree awarding preference to a claim, and rendered in a proceeding in which the assignor and assignee appeared but to which the creditors were not parties.

4. SAME—*when assignee may be charged with money he has not actually received.* An assignee for the benefit of creditors may be charged with money which he never actually received, if in his report he treats it as assets and claims credit for its disbursement.

5. The objection that the trust property involved was never the property of the insolvent trustee, and hence did not pass to his assignee, is determined in *Estate of Seiter* v. *Mowe,* (*ante,* p. 351).

PHILLIPS, J., dissenting.

*Weir* v. *Mowe,* 81 Ill. App. 287, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the County Court of St. Clair county; the Hon. E. C. RHOADS, Judge, presiding.

TURNER & HOLDER, for appellant:

The assignee of an insolvent debtor, under a voluntary assignment, is not an innocent purchaser for value.

He takes the property assigned subject to all equities, liens and encumbrances, whether created by operation of law or by the act of the insolvent, which existed against the same in the hands of the insolvent. His title is subject to every infirmity by which it was affected in the hands of the assignor. Burrill on Assignments, (6th ed.) 482, 483; Candlish on Assignments, secs. 149, 150, and cases cited; *Brown* v. *Brabb*, 67 Mich. 17; *Union Nat. Bank* v. *Goetz*, 32 Am. St. Rep. 125, note; *Meyers* v. *Board of Education*, 51 Kan. 87; *Peak* v. *Ellicott*, 30 id. 156; *Independent District* v. *King*, 80 Iowa, 497; *Ryan* v. *Phillips*, 3 Kan. App. 704; *Hazeltine* v. *McAfee*, 5 id. 119; *Bank* v. *Sanford*, 62 Mo. App. 283; *I. X. L. Co.* v. *Chonreich*, 65 id. 283; *Insurance Co.* v. *Kimble*, 66 id. 370; *Synod* v. *Schoenich*, 45 S. W. Rep. 647; *Pundmann* v. *Schoenich*, id. 112; *Davenport Plow Works* v. *Lamp*, 80 Iowa, 722; *Phillips* v. *Overfield*, 100 Mo. 466; *Ulrici* v. *Boekeley*, 72 Mo. App. 61; *Harrison* v. *Smith*, 83 Mo. 210; *Stotler* v. *Coats*, 88 id. 514; *Chase* v. *Chapin*, 130 Mass. 131; *Bank* v. *Insurance Co.* 104 U. S. 54; *Peters* v. *Bain*, 133 id. 670; *Bank* v. *Gillespie*, 137 id. 421; *Wetherell* v. *Building Ass.* 153 Ill. 365; *Halle* v. *Bank*, 140 id. 413; *Hooven* v. *Burdette*, 153 id. 672; *Schwartz* v. *Messinger*, 167 id. 472; *Davis* v. *Dock Co.* 129 id. 180; *Jones* v. *Kilbreth*, 49 Ohio St. 401; *Phenix Milling Co.* v. *Anderson*, 78 Ill. App. 261; *O'Hara* v. *Jones*, 46 Ill. 288.

The assignee for the benefit of creditors is the agent of the assignor for the distribution of the property assigned. He takes no greater or other interest in the property assigned than the assignor had. Any property held in trust for another by the assignor does not pass to the assignee by the assignment. Flint on Trusts and Trustees, sec. 240; *Ludwig* v. *Heighley*, 5 Barr, 132; 24 Am. & Eng. Ency. of Law, 21; *Bank* v. *Wheeler*, 74 Ill. App. 261; *Jones* v. *Kilbreth*, 49 Ohio St. 401.

A trustee cannot lawfully intermingle the trust property with his own, and if there is a breach of trust by a trustee in this respect, the trust funds may be followed

into the hands of a purchaser for value, if he had notice of it, and into the hands of one not purchasing for value, whether he had notice of the breach or not. Flint on Trusts and Trustees, sec. 316; 27 Am. & Eng. Ency. of Law, 251; *Norton* v. *Hixon,* 25 Ill. 371; *Attorney General* v. *Agricultural College,* 85 id. 516; *Henry County* v. *Drainage Co.* 52 id. 454; *Insurance Co.* v. *Spaids,* 99 id. 251; *Fast* v. *McPherson,* 98 id. 469; *Sholty* v. *Sholty,* 140 id. 81; *Halle* v. *Bank,* 140 id. 413; Original Assignment Act, sec. 11; Starr & Cur. Stat. chap. 72, sec. 47; *Hopkins* v. *Burr,* 24 Col. 502; *Bank* v. *Insurance Co.* 104 U. S. 54; *Peters* v. *Bain,* 133 id. 670.

The circuit court had jurisdiction to make the order directing that the trust fund belonging to this insane man, which had been unlawfully intermingled with the individual funds of the trustee, should be separated from the funds of the trustee and turned over to his successor. There being a trust, nothing is better settled than that a court of equity has jurisdiction to enforce an account and surrender of the trust property at the time when the trustee should have done so but had refused. *Ellsworth* v. *Ames Co.* 125 Ill. 225; 27 Am. & Eng. Ency. of Law, 245; *Weaver* v. *Fischer,* 110 Ill. 146; *Russell* v. *Bank,* 139 id. 538; *Reese* v. *Wallace,* 113 id. 594; Const. art. 6, sec. 12.

A court of equity has jurisdiction to enforce trusts, and the trust property may be followed by a court of equity into the hands of purchasers and assignees who are mere volunteers or who had notice of the existence of the trust; and this jurisdiction is not taken away by the fact that the party has a remedy at law, especially where the party seeking relief is entitled to a discovery, or where the trustee is bound to state an account of the trust and its proceeds. Candlish on Assignments, sec. 269; Burrill on Assignments, (6th ed.) sec. 441; *Gregory* v. *Bank,* 171 Mass. 67; *Dias* v. *Brunells,* 24 Wend. 10; *Cheney* v. *Langley,* 56 Ill. App. 86; *Halle* v. *Bank,* 140 Ill. 413.

HORNER & WINKELMANN, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is an appeal from the Appellate Court for the Fourth District. The questions involved grow out of an assignment proceeding in the county court of St. Clair county, in which appellant, M. W. Weir, was appointed assignee of the insolvent estate of Henry Seiter. As in the case between the same parties involving a claim in favor of Lucetta Nichols, the contention of appellant is that the county and Appellate Courts erred in holding that a claim in favor of Lucius D. Turner, conservator for James H. Riggin, was not entitled to preference as a claim for trust funds over the general creditors of Henry Seiter.

It appears from the opinion of the Appellate Court that there the appellant insisted upon two reasons why the judgment of the county court disallowing that claim should be reversed: First, because the trust fund, which amounted in this case to $14,181.42, was never the property of Seiter, and therefore did not pass to his assignee; and second, that a certain decree entered in the circuit court of St. Clair county was binding upon all the parties to that proceeding, and was *res judicata* as to the claim in question in this case. The first of these reasons is, in substance, the grounds of reversal urged in the case involving the Nichols claim, and what we have said in the opinion filed in that case must be held to dispose of the same here.

The second ground of reversal is based upon the fact that the circuit court of St. Clair county, upon a petition filed by Turner, as conservator of Riggin, against Seiter, and Weir as his assignee, after the assignment of December 10, 1895, entered a decree to the effect that the claim here in question was entitled to preference in the settlement of the assigned estate, and ordering the assignee to pay the same in full out of the over-drafts due the bank, as soon as the same should be collected. The Appellate

Court, in its opinion by WORTHINGTON, J., we think has disposed of that question properly, in the following language:

"The only remaining question to be considered is the effect of the decree of the circuit court made June 20, 1898, upon the petition of Turner against Seiter, and Weir, as assignee. If the circuit court had jurisdiction, as against appellees, to decide upon the priority of claims against the Seiter estate in the hands of the assignee by virtue of the deed of assignment, or to decide that certain assets in the hands of the assignee, scheduled by Seiter as his property and so inventoried by the assignee, were not his property but were the property of James H. Riggin, and therefore subject to the claim of Turner, as trustee, then this question is *res judicata,* and the decree of the circuit court is binding, not only upon the assignee, but upon the county court and upon all the creditors of Seiter.

"When the assignee took possession of the assets of Seiter the county court had exclusive jurisdiction in controlling their application in the payment of claims. It had power to pass upon the character of claims, to investigate liens and to equitably adjust priorities, to the same extent that a court of chancery might do. Any other construction of the Assignment law would open the door to confusion and conflicts of jurisdiction. There may be special instances, as in the enforcement of a mechanic's lien, in which a circuit court may have jurisdiction to enforce the lien when the property of a debtor is in the hands of an assignee; but there must be reasons for these special instances growing out of the character of the lien, or because it cannot be enforced except in the circuit court. The decisions of the Supreme Court of this State clearly establish this doctrine. The case of *Frey-dendall* v. *Baldwin,* 103 Ill. 330, is a leading case upon this point and has been repeatedly followed. It is there said: 'Thus it is seen that the whole management of the estates of insolvent debtors, under voluntary assignments,

is committed to the jurisdiction of county courts, and by section 14 full authority and jurisdiction are given to such courts in regard to such matters.  How the trust funds in the hands of the assignee are to be paid over and distributed are matters for the determination of the county court where such proceedings are pending, and its judgments and orders in that respect can only be reviewed as the judgments and decrees of other courts of competent and original jurisdiction are reviewable by appellate courts.  It was entirely competent for the General Assembly to confer such jurisdiction on county courts, and their jurisdiction in such matters is too manifest to be disputed.  Certainly a court of chancery will not assume jurisdiction on a bill to interfere and direct how the county court shall distribute a fund over which it has full and complete jurisdiction by positive statute, unless under special circumstances.'  To the same effect are *Hanchett* v. *Waterbury*, 115 Ill. 220; *Farwell* v. *Crandall*, 120 id. 70; *Wilson* v. *Aaron*, 132 id. 238; *Newman* v. *Commercial Nat. Bank*, 156 id. 530; *Plume & Atwood Manf. Co.* v. *Caldwell*, 136 id. 163; *Osborne* v. *Williams*, 34 Ill. App. 423; *Brown* v. *Stewart*, 159 Ill. 212.

"In *Clark* v. *Burke*, 163 Ill. 334, it is said: 'We have held in *Freydendall* v. *Baldwin*, 103 Ill. 330, *Hanchett* v. *Waterbury*, 115 id. 220, and other cases, that the county court, under these provisions, has complete control over the settlement of assigned estates, and that other courts have no power to interfere with the exercise of that jurisdiction. In other words, the county court, in the settlement of insolvent estates, under this statute, is not, as seems to be assumed by counsel for appellant, a court of limited jurisdiction, but, on the contrary, in such matters is not only a court of general but of exclusive jurisdiction.'

"It follows from this construction of the Assignment law that the circuit court was without authority to interfere with the distribution of the Seiter assets in the hands of the assignee.

"Nor do we think, even if it were held that this was one of the special cases in which it might assume jurisdiction, that its decree was binding upon appellees. An examination of the petition and decree disclose these facts: Neither appellees nor any of the general creditors of Seiter were parties to this proceeding, nor were they in any way represented in it. Seiter, by his deed of assignment, passed to his assignee the legal and equitable title of all the property scheduled, including over-drafts, absolutely and beyond his control. (*Browne-Chapin Lumber Co. v. Union Nat. Bank,* 159 Ill. 458.) Nothing that he might say or do subsequent to the assignment could affect the title or character of any asset so conveyed. The general creditors were not then represented by Seiter. Weir, the assignee, was not the agent of the general creditors. He was the agent of Seiter for the distribution of the assets in his hands as assignee. (*Bouton v. Dement,* 123 Ill. 142; *Hanford Oil Co. v. First Nat. Bank,* 126 id. 584.) He did not, therefore, represent the general creditors. Appellees, as general creditors, had an interest in the assets in the hands of the assignee from the date of proving their claims. (*Levy v. Chicago Nat. Bank,* 158 Ill. 88; *Gibson v. Rees,* 50 id. 383.) They were therefore entitled to be represented in any proceeding that affected their interests. If not represented in such proceeding they were not concluded by any judgment or decree entered in it. Neither would such judgment or decree, or any finding of fact stated in it, be competent evidence against them in any subsequent proceeding. In *Brush v. Fowler,* 36 Ill. 53, it is said: 'We understand the doctrine to be universally recognized that no one can be injuriously affected by a judgment or decree of any court who was not a party to such judgment or decree.' To the same effect is Broom's Legal Maxims, sec. 758; 1 Greenleaf on Evidence, sec. 523; *Schulz v. Schulz,* 138 Ill. 665.

"Neither can it be said that appellees are privies, so as to be bound by the appearance of either Seiter or of

his assignee. After the date of the assignment, December 10, 1894, neither of them could do or say anything that would affect the interests of appellees. The evidence shows that the petition of Turner to the circuit court was filed, not only after the assignee had taken possession of the estate, but also after notice to creditors to file claims had been given, and also after both Turner and appellees had filed their claims. Appellees were not then privies to either Seiter or Weir, and so not represented by them.

"It may be said, further, that the finding upon which the decree is based, namely, that the over-drafts represented the Riggin fund, is not based upon any issue tendered in the petition. It is a finding of fact where there is no allegation to warrant the finding. After alleging the appointment of Seiter as trustee, and his failure to turn over the fund to Turner, the petition alleges: 'Your petitioner further represents that the said Henry Seiter, on the 10th day of September, 1894, made, executed and delivered to Marshall W. Weir a deed of assignment assigning and transferring to said Weir all of the property, real and personal, of him, the said Henry Seiter, for the benefit of the creditors of said Seiter, including the funds of said James H. Riggin, insane, in the hands of said Seiter, trustee, as aforesaid.' And again, in the prayer of the petition: 'That upon a hearing hereof the said Henry Seiter may be ordered to pay and turn over to your petitioner the trust fund so found to be in his hands; that in case the said Henry Seiter has transferred and turned over to his assignee, the said Marshall W. Weir, the said trust fund, intermingled and mixed with his individual property, then he, the said Weir, may be ordered and adjudged and decreed to turn over and pay to your petitioner the said trust fund in full, with legal interest thereon from January 14, 1895, out of the first funds coming into his hands as such assignee, and that your petitioner may be decreed to have a first and prior lien upon

all the funds in the hands of Weir, as assignee, for the payment of the trust fund.'

"It will be seen from these quotations from the petition that there is no averment in it that the Riggin fund had been kept separate by Seiter or was in any way separate and distinguishable from other assets in the hands of his assignee, or that it was represented by any over-drafts. Yet the finding in the decree is, 'that between the seventh day of February, 1894, and December 10, 1894, there was paid out of the bank of Henry Seiter & Co., in over-drafts, to sundry customers of said bank, the sum of $23,546.07; that in said over-drafts was included the said trust fund belonging to James H. Riggin,' and further finds that Weir, as assignee, is collecting such over-drafts, together with the assets of Seiter.

"The decree orders that Weir, as assignee, pay to Turner, the trustee, the sum of $14,025.59, with interest from January 14, 1895, or such part thereof as he can realize out of the assets in his hands designated as over-drafts, and that said sum of $14,025.59, included in said assets as over-drafts, is the property and funds of said trust fund belonging to said Riggin, etc. In other words, without it having been so alleged in the petition, the decree finds that $14,025.59, being the Riggin fund, is a part of $23,546.07 owed by debtors to Seiter and represented by over-drafts on the Henry Seiter & Co. bank, in the hands of assignee. It invades the jurisdiction of the county court, which alone has authority to direct the distribution of the insolvent's estate, by ordering that $14,025.59 of these over-drafts should be applied in payment of the Riggin fund. As the county court, in the case at bar, rightly holds that there is no evidence before it to show that the Riggin fund is embraced in the over-drafts, there results the natural conflict and confusion in administration which an interference by one court claiming jurisdiction with another court having jurisdiction is likely to cause.

"This further fact appearing in evidence is proper to be noted: Both Turner, the trustee, and Weir, the assignee, are sureties on Seiter's bond, as trustee, for $25,000. Turner petitions to have the Riggin fund declared a lien and entitled to priority of payment. Weir and Seiter respond. The petitioner and the respondent Weir are both sureties on Seiter's bond. Seiter is interested to protect his bondsmen. All parties to the petition, then, are interested in having $14,025.59 taken out of the fund in the assignee's hands for the payment of general creditors and applied specially in payment of the claim for which Turner and Weir are sureties. No one interested in opposing the petition is made a party. It is not easy to imagine a proceeding in which both complainant and defendants would more heartily and harmoniously desire the same decree.

"We conclude, then, that the decree of the circuit court was not competent evidence to prove that the Riggin fund was embraced in the over-drafts; that the court being without jurisdiction, its decree is not binding upon the county court, the assignee, or upon appellees; that the evidence in the case at bar fails to show that the over-drafts include the Riggin fund, but does show that this fund was mixed and mingled with the money in the Seiter bank and is incapable of separation or identification."

It is claimed by counsel for appellant, in their brief, that the county court could not legally make an order charging the assignee with the $14,181.42, because, as is said, that money never came into his hands. It appears that by a certain agreement between creditors of Seiter he was to make good certain over-drafts to the bank. He was assisted in doing so by friends, who paid a certain amount in cash and gave their notes for the balance. It seems that the cash was received by the assignee, but it is claimed that the notes were delivered directly to Turner in satisfaction of this Riggin claim. While it is

therefore true that the assignee did not actually receive the notes amounting to the $14,181.42, it is shown by his report and the proceedings in the county court that he treated them as assets in his hands and claimed credit for the payment of the claim in full.

We find no sufficient reason for disturbing the judgment of the Appellate Court, and it will accordingly be affirmed.                    *Judgment affirmed.*

Mr. JUSTICE PHILLIPS, dissenting.