Taylor v. Seiter.

---

### Joseph Taylor et al. v. Henry Seiter et al.

100    643
s199s  555

1. VOLUNTARY ASSIGNMENT—*All the Property Assigned, Subject to Jurisdiction of County Court.*—After the delivery of a deed of assignment, all the property, both in law and in equity, in the judgment of the law, is within the operation of the deed of assignment, and becomes subject to the jurisdiction of the County Court.

2. SAME—*Deed of. Assignment Conclusive on Assignor.*—Where a deed of assignment is delivered to the assignee, the assignor thereby completely relinquishes his dominion over his property; it is beyond his power, either by his acts or by his purposes, to invalidate the assignment he has made.

3. SAME—*Fraudulent Agreement of Creditors or Erroneous Order of Court, Not Act of Assignee.*—Any agreement, however fraudulent, concerning the assigned estate, made between any or all of its creditors, and any orders made by the County Court in the administration of the estate, no matter how wrong or erroneous, can, neither as a matter of law nor fact, be deemed the act of the assignor, or held to invalidate an assignment created in good faith, without fraud in its inception.

4. SAME—*An Agreement of Creditors as to the Mode of Dealing with Property, When Tantamount to a Decree of Court, and Conclusive as to Them.*—An agreement entered into between some of the creditors as to a certain mode of dealing with the assigned property to pay their debts, would not bind other creditors who have proved their claims before the assignee, nor would such an agreement be binding upon the County Court. But once such an agreement is sanctioned by the court, it becomes in substance a decree of the court in the administration of the estate, that must be appealed from at the proper time, by any person who was a party to the assignment and who considers himself injured thereby; not to appeal is to be concluded by the rule of *res judicata* as to all property embraced within the assignment, no matter how erroneous the order may be as measured by the assignment statute and the adjudication of the courts in interpretation thereof.

5. SAME—*Creditors Who Have Received Benefits of Assignment Can Not Attack It.*—Creditors who have filed their claims with the assignee and received dividends from the assigned estate can not be permitted to, at the same time, enjoy the benefits of the assignment and to assail it by creditor's bills. This principle has been so strongly enforced that in a case where the deed of assignment itself was void on its face, the court held the creditor, who by some significant act has made himself a party to the assignment, may not take any steps to impair its validity.

6. SAME—*Is Good as to All Debts that Are Bona Fide.*—The preponderance of authority is in favor of the opinion that the assignment will be held good as to all debts that are *bona fide;* and this rule would undoubtedly prevail in this State where the provision is made by Secs. 4 and 5 of the assignment act for testing the validity of the claims presented to the assignee for payment under the assignment.

**Creditor's Bill.**—Appeal from the Circuit Court of St. Clair County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Heard in this court at the August term, 1901. Affirmed. Opinion filed March 3, 1902.

**Statement.**—This is a creditor's bill, brought by appellant Taylor, a judgment creditor of Henry Seiter, on behalf

of himself and such other like creditors of Seiter as might choose to intervene and assist in paying the costs and expenses in prosecuting the suit against appellees Henry Seiter, Marshall W. Weir, assignee of Henry Seiter, Mamie Seiter, The Lebanon Dairy & Creamery Company, with Henry D. Sexton, Frederick M. Blount, Charles Parsons (trustees); John H. Witbeck, John R. Walsh, Andrew McNally, Elbridge G. Keith, Edson ˙ Keith, Charles L. Hutchinson, Ernest A. Hamill, John A. King, Edward S. Dreyer (called Chicago creditors); and The National Bank of St. Louis, Mo., the National Bank of the Republic, of St. Louis, Mo., the Laclede National Bank, of St. Louis, Mo., the State Bank of St. Louis, Mo.; the Lafayette Bank, of St. Louis, Mo., the German-American Bank, of St. Louis, Mo. (called St. Louis banks); also H. P. Rogers, Edward Rogers, Richard House, Fred Renner and Edward Hourey.

The creditors who intervened and became parties complainant are, Anna Weber, Emily Art, Robert D. W. Holder, Charles A. Stookey, Alonzo S. Wilderman, Lucius D. Turner, Rudolph Ocks, L. Niemeyer, Ella P. Lindley, Ida B. Kneisley and Emma J. Kneisley. Taylor and the intervenors had recovered judgments against Seiter, on which executions had been issued and returned " no property found."

The object and purpose of the bill is to set aside certain deeds of, and subject to a sale by the master in chancery, the following described lands, to wit:

The south half of section thirteen; the northeast quarter and the east half of the northwest quarter of section fourteen; the west half of the southwest quarter, the southwest quarter of the northwest quarter, the northeast quarter of the southwest quarter (less the east five acres), and the southeast quarter of the northwest quarter (less the east five acres), of section nine; all of said lands being in township No. 2 north, range No. 6 west, in St. Clair county, Illinois, being 750 acres; and being, as alleged in the bill, of the value of $65,000; the proceeds of the sale to be applied in paying the judgments of appellant Taylor, and of the intervenors against Seiter.

Henry Seiter, in 1891 and before that time, was the owner of the lands sought to be reached in this case, and they were used by him in carrying on a dairy and creamery business until August of that year, when he turned the business over to a company which he had been instrumental in having incorporated, under the laws of this State, with a capital stock of $60,000, in shares of $100 each, 596 shares of which were subscribed for and issued to Seiter, the remaining four shares having been subscribed for and issued to James D. Baker, Ed. L. Robinson, N. A. Hanlon, and Mamie Seiter, wife of Henry Seiter, one share each.

The name of the corporation thus created was the "Lebanon Dairy & Creamery Company," and Henry Seiter became its president and general manager.

The company so formed took possession of the land and took over and continued the dairy and creamery business begun by Seiter, and on the 21st of July, 1894, increased its capital stock 650 shares, all of which were subscribed and taken by Henry Seiter.

Seiter testified that the 600 shares of stock originally subscribed were paid for, and that when the last 650 shares of stock were taken by him, the understanding and agreement between the company and himself was that the stock should be paid for by the conveyance of the land before described, by Seiter and his wife, to the dairy and creamery company, and there is no testimony in the record to the contrary, as to either fact.

On the next day after the 650 shares of stock were issued, Seiter and his wife made and duly acknowledged a warranty deed of the land, for an expressed consideration of $75,000, to the dairy and creamery company, and Seiter testified that the deed was delivered to him as the legal representative of the company, on the day of its date, and that the reason he did not have the deed recorded at once was that he had, before that time, borrowed of Rufus N. Ramsay $50,000, and conveyed to Ramsay a part of the land by deed, to secure the loan, and while he had given Ramsay other collaterals to secure the loan to the satisfac-

tion of Ramsay, he had not yet received the deed from Ramsay; and there is no evidence to the contrary.

At the time of making the deed to the dairy and creamery company, and for years before, Seiter was and had been engaged in banking and was running two banks, one at O'Fallon, and one at Lebanon, where he resided.

The stock of the creamery company was pledged by Seiter to the St. Louis banks to secure them for money loaned to him.

On the 8th of December, 1894, Seiter, finding himself unable to pay his obligations, concluded to make an assignment of his property for the benefit of his creditors; but the day being Saturday, he deferred the matter until the following Monday, December 10th, when he went to the recorder's office of St. Clair county and had the deed to the creamery company duly filed for record, and about an hour thereafter he caused to be filed a deed of assignment of his property to Marshall W. Weir, as assignee, for the benefit of his creditors.

In the schedule of his assigned property the land was not included, but the stock of the creamery company was listed with a note or memorandum that it was already hypothecated with the St. Louis banks.   Seiter also owned or had an interest in about 3,000 acres of land in Madison county, in this State, but the value of and title to this land seems to have been uncertain.

A large portion of Seiter's indebtedness was to Rufus N. Ramsay, treasurer of this State, and was for State money, and when Ramsay died, on November 11, 1894, indebted to the State, appellees Witbeck and others, who were sureties on Ramsay's bond, and who are parties to this suit, made good Ramsay's defalcation and succeeded to the securities held by Ramsay for Seiter's indebtedness, which was upward of $240,000.

The sureties on Ramsay's bond claim to have succeeded in getting other security on Seiter's property for Seiter's debt, some considerable time before Seiter contemplated making an assignment.

When Seiter made his assignment the Lebanon Dairy & Creamery Company and the Illinois Land Company together were indebted to him on overdrafts the sum of $20,736.55.

At the April term, 1895, of the Circuit Court of St. Clair County, Weir, as assignee of Seiter, brought his bill in chancery to set aside the deed of Seiter to Ramsay, the deed from Seiter to the Lebanon Dairy & Creamery Company, and other conveyances and pledges of land and property claimed to have been made by Seiter to some of his creditors for the purpose of preferring them to his other creditors. A further object of the bill was to secure control of all Seiter's mortgaged and pledged property, that it might be fully administered by the assignee under the deed of assignment.

All of the sureties on Ramsay's bond as state treasurer were made parties to the bill, with their trustee, the Equitable Trust Company, of Chicago, which held the stocks, property and securities turned over and pledged to it, to secure its *cestui que trusts;* but the St. Louis banks were not made parties to the proceeding.

The bill seems to have been answered by some of the parties to it, but nothing was done under it, and it was superseded by what was called a "creditor's agreement," and an order and decree made by the County Court of St. Clair County, at its July term, 1895, which order and decree, with the agreement as a part thereof, is as follows:

"STATE OF ILLINOIS, ⎱ ss.
   St. Clair County.      ⎰

IN THE COUNTY COURT OF THE JULY TERM, 1895.

In the Matter of the Assign- ⎫
   ment of HENRY SEITER,    ⎬
   Insolvent.               ⎭

And now comes Marshall W. Weir, assignee of Henry Seiter, insolvent, by his attorneys, and presents his petition and exhibits, and prays for an order of this court to be allowed and directed to execute certain deeds and papers, etc., etc., in said petition fully set forth, which petition and exhibits are ordered filed, etc. And the court having examined said petition and the creditor's agreement and proposed

deed of trust, marked exhibits 'A' and 'B,' which exhibits 'A' and 'B' are in the words and figures following, to wit:

'EXHIBIT A.

Whereas, claims and evidences of indebtedness have been filed with Marshall W. Weir, of Belleville, St. Clair county, and State of Illinois, assignee of the insolvent estate of Henry Seiter, of said county and state, by the following named parties, viz., John H. Witbeck and others, for the sum of $243,778.52, and interest on said sum; National Bank of Commerce, in St. Louis, Missouri, * * * $56,468.68, and interest on said sum; National Bank of the Republic, of St. Louis, Missouri, $9,828.97, and interest on said sum; Laclede National Bank, of St. Louis, Missouri, $10,000, and interest on said sum; Lafayette Bank, of St. Louis, Missouri, $10,001.85, and interest on said sum; German-American Bank, of St. Louis, Missouri, $2,000, and interest on said sum; State Bank of St. Louis, Missouri, $15,000, and interest on said sum; aggregating the sum of three hundred and forty-seven thousand and seventy-eight dollars and accrued interest ($347,078.02).

And, whereas, the above named creditors hold certain property, real and personal, as collateral security to said indebtedness, consisting of twenty-five hundred (2500) shares of stock of the Illinois Farm Company, a corporation, whose lands embrace two thousand nine hundred and two (2,902) acres in Madison county, in the State of Illinois (including the contracts of conveyances now in the name of M. W. Weir).

Twelve hundred and fifty shares of stock of the Lebanon Dairy & Creamery Co. (a corporation), whose lands embrace nine hundred and forty (940) acres and two lots in the city of Lebanon, in St. Clair county, Illinois; and also certain deeds for portions of the lands belonging to or claimed by said two corporations.

Also the undivided half of three hundred and twenty (320) acres of land in Madison county, Illinois.

Also one hundred and sixty-three (163) acres of land in St. Clair county, Illinois, and known as the " Mound Farm."

And also one hundred (100) lots in the city limits of the City of Chicago, County of Cook, State of Illinois.

And, whereas, conflicting claims and litigation as to certain of said lands and other property, held as collateral to said indebtedness, and as to certain loans on said lands and heretofore deeded to said corporations, viz., the Illinois Farm Co., and the Lebanon Dairy & Creamery Co., have

arisen between the creditors aforesaid, the assignee and other creditors of the said Seiter, and it is deemed desirable to compromise and adjust all said conflicting claims, whether now asserted or which may be hereafter asserted. And, whereas, offers of compromise have been made for the settlement of the indebtedness above set forth, by which the claims of John H. Witbeck and others, amounting with interest to the sum of $260,000, can be compromised and the collateral and lands held by them acquired on the payment to them of the sum of $125,000.

Now, therefore, it is agreed by the undersigned creditors of said Seiter, in consideration of the premises and of the sum of $125,000, to be advanced for the purpose aforesaid; and in further consideration of the withdrawal of the claims above enumerated and set out, amounting to the sum of $347,078.02, and interest, to wit, the said Whitbeck and others, and the said St. Louis banks above named, from any participation in the remaining and other assets of the said Henry Seiter, insolvent; that all the collaterals, that is to say, shares of stock, lands and personal property held and claimed to be held as collateral by said parties first aforesaid, the said Witbeck and others and the St. Louis banks, whether herein before specifically enumerated or not, shall be conveyed, assigned and transferred to a trustee or trustees, who are to hold, manage and dispose of the same as security for the payment and liquidation of said sum of $125,000 to said Witbeck and others, or to such persons or corporations as may advance such sum, and for the payment of said other indebtedness to said St. Louis banks, and interest on said several sums as above specified; said trustees to hold all said assets upon such terms and conditions, and with such powers, rights and duties, as may be mutually agreed upon between Marshall W. Weir, assignee, Henry Seiter, and said St. Louis banks.

And the undersigned creditors, upon the withdrawal of said claims, as aforesaid, agree to surrender and release, and hereby do surrender and release, and forego all claims of whatsoever nature or right in law or equity they and each of them have or claim to have to any and all of the said shares of stock and other property, real or personal, heretofore conveyed to any of the parties first above named as creditors, or to Rufus N. Ramsay, deceased, as collateral security, or to the two corporations, viz., the Illinois Farm Co., and the Lebanon Dairy and Creamery Co., or to be hereafter conveyed to said trustees or corporations, and hereby ratify all assignments, conveyances or other transfers of

Taylor v. Seiter.

said properties or other assets heretofore made to said creditors, R. N. Ramsay, or corporations, or to the Equitable Trust Company of Chicago, Illinois, or which it may hereafter be necessary for Henry Seiter, his assignee, or any other person or persons, to make to said trustees or corporations, to vest in them or either of them the title to said assets and collaterals aforesaid, for the purpose of the trust aforesaid.

Provided, however, that the trustee or trustees to whom such collaterals are conveyed shall, after satisfying and liquidating the indebtedness of $125,000 to the person or persons by whom said sums may be advanced, and to the St. Louis banks aforesaid, etc., the sums above specified and interest due them respectfully (respectively), as well as the expenses of the trust, be required to account for and turn over to the assignee of Henry Seiter all the surplus of money or other property or assets remaining in his or their hands.

It is further agreed that all the claims of the assignee of Henry Seiter against the Illinois Farm Co. and Lebanon Dairy and Creamery Company may be compromised by the payment to said assignee of the sum of $20,733.96, on or before the first day of January, A. D. 1896.

And we hereby agree that the assignee, Marshall W. Weir, shall execute all necessary deeds or releases to carry this agreement into effect, and that the Circuit or County Court of St. Clair County, Illinois, may make any and all proper orders and decrees in any suits or proceedings now pending, or which may hereafter be brought, necessary to carry into effect the intent and purpose of this agreement.

Witness our hands, this 23d day of April, A. D. 1895.

(Signatures of 248 creditors.)

EXHIBIT B.

Know all men by these presents, that we, the Illinois Farm Company, a corporation of the State of Illinois, the Lebanon Dairy and Creamery Company, also a corporation of said State of Illinois, the Equitable Trust Company of Chicago, a corporation of the State of Illinois, Henry Seiter and Mamie Seiter, his wife, and Marshall W. Weir, assignee of said Henry Seiter, all of the County of St. Clair and State of Illinois, excepting the said Equitable Trust Company of Chicago, the said Weir, as such assignee, executing and delivering these presents under and by authority of an order of the County Court of said County of St. Clair, made and entered of record in the matter of the assignment of said

Henry Seiter, on the —— day of August, 1895; in consideration of the sum of one dollar to us in hand paid, and of the faithful execution by the trustees herein of the uses and trusts hereinafter mentioned, do hereby sell and convey unto Charles Parsons, of St. Louis, Missouri, Frederick M. Blount, of Chicago, Illinois, and Henry D. Sexton, of East St. Louis, Illinois, in trust, however, as hereinafter set forth, and not otherwise, all of the following described real and personal property, to wit:

(Here describe all of the real and personal property of the Illinois Farm Co., all of the real and personal property of the Lebanon Dairy & Creamery Co., all of the real and personal property that Seiter conveyed as security for his indebtedness, or to said corporations, Chicago lots, etc.)

To have and to hold the same unto the said grantees, upon the uses and trusts following, that is to say:

The said trustees shall take immediate possession of all of the said properties, and carefully and correctly inventory the same in writing, and furnish a copy of such inventory to each *cestui que trust* hereinafter named. They shall proceed to sell and convey the same for such prices and upon such terms as to them may seem best.

Until such sale can be effected, said trustees may cultivate the lands, or any part thereof, lease the same, or any part thereof, and generally manage and conduct the properties, real and personal, hereby conveyed to them, and the business connected therewith, incident or appertaining thereto, as an owner might do who desired to manage and sell said properties to the best advantage.

And inasmuch as a portion of the lands hereby conveyed is subject to mortgages, and the legal title to twelve hundred and twenty acres (1220), more or less, of the same, is not now in said grantors, the said trustees, if they deem it for the best interest of the *cestui que trust* to do so, may pay all sums of money necessary to remove the incumbrances aforesaid and to procure said legal title, to be placed in themselves or their grantees; and in order to raise money for such purposes, as well as for the payment of taxes and the expenses incurred, or to be incurred from time to time, in the management of said properties and the conduct of the business connected therewith, said trustees may borrow money, and if they deem it necessary and proper, pledge or mortgage any or all of said property, and may apply the proceeds of some of said property, which is unincumbered, as well as the rents, issues and profits of any of said properties, to the payment of said incumbrances and the procure-

ment of said legal titles, and of the expenses incurred in the management aforesaid.

In case all of said property is not sold within two years from the date thereof, or in case of neglect or refusal of said trustees to faithfully execute any duty hereby imposed upon them, any of the *cestuis que trust* hereinafter named may apply to the Circuit Court of the county of St. Clair, in the State of Illinois, or to the Circuit Court of the county of Madison, in the State of Illinois, and procure the appointment of some other trustee or trustees to execute the trusts herein created, subject to the orders and directions of the court.

And upon the appointment of any successor or successors in trust to the said trustees, they shall thereupon convey to the trustee or trustees so appointed, all of the property therein described, which shall not at that time have been disposed of hereunder, and shall pay over to such successor or successors all money in their hands, received by them as trustees hereunder, and shall render to the court therein a true and perfect statement of all their acts and doings in the premises, as well as an inventory of all property received hereunder, and the duties hereby imposed upon them shall cease and determine.

·Out of the proceeds of said sales, and from the moneys received from all sources, said trustee shall pay :

First. The costs and expenses of the execution of this trust, including taxes and reasonable attorney's fees.

Secondly. The compensation of said trustees, which shall be three per cent (3%) of all money handled by them in the performance of their duties hereunder.

Thirdly. Said trustees may pay all sums owing by the Illinois Farm Company and the Lebanon Dairy and Creamery Company for work and labor done and material furnished, other than to H. Seiter or his assigns, which in their opinion shall be just and valid claims, and all costs of suits brought by any of the *cestuis que trust* herein against any of the grantors relating to the subject-matter of this contract.

Fourthly. They shall pay and liquidate ratably and without preference trustees' certificates to be issued by them, dated May 1, 1895, marked "Series A," certifying that the persons or corporations named therein, or their assigns, are entitled to share ratably with all other certificates of the same series in the net earnings, rents and proceeds of the properties hereby conveyed to them, which certificates are to be issued for amounts and to the parties following, to wit:

· To John H. Witbeck, John R. Walsh, Andrew McNally,

Elbridge J. Keith, Edson Keith, Charles L. Hutchinson, Ernest A. Hamill, John A. King, William A. Hammond and Edward S. Dreyer, certificates aggregating $125,000.

To the National Bank of Commerce, in St. Louis, certificates aggregating $58,012.41.

To the National Bank of the Republic, of St. Louis, certificates aggregating $10,084.51.

To the Laclede National Bank, of St. Louis, certificates aggregating $10,322.22, and interest to May 1, 1895.

To the State Bank of St. Louis, certificates aggregating $15,386.66.

To the Lafayette Bank of St. Louis, certificates aggregating $10,377.77.

To the German-American Bank of St. Louis, certificates aggregating $2,049.33.

Said certificates to be transferable by assignment and bear interest from May 1, 1895, at the rate of six per cent per annum.

Fifthly. After the certificates marked Series "A" shall have been paid in full, with interest, said trustees shall, out of any assets or money remaining, pay certificates marked Series "B," to be issued by them for the repayment of money advanced to them for the purpose of paying the sum of $20,736.55 required to be paid to Marshall W. Weir, assignee, by the order of the County Court of St. Clair County, hereinbefore referred to, which certificates "B" shall be as follows, to wit:

Three certificates for $5,000 each to H. P. Rogers and one certificate be issued for $5,736.55 to Edward Rogers and A. F. Rogers, dated September 1, 1895, bearing interest at the rate of six per cent per annum from date, said certificates to express on their face that they are payable out of said net rents, earnings and proceeds of sale only after series "A" of certificates have been paid, and that the holders thereof have no other claim for payment thereof against said trustees or the properties conveyed to them, or against any of the grantors herein.

Sixthly. All the surplus, if any, remaining after all the sums above named have been paid in full, shall be paid and transferred to Marshall W. Weir, assignee of Henry Sciter. In case any differences arise between the said trustees as to the execution of this trust, the action of the majority of them shall be deemed a valid and sufficient execution of the same.

Seventh. In case of the death, resignation, refusal or inability to act of Henry D. Sexton, one of said trustees

above named, the two remaining trustees may appoint another person to act as trustee in the place of the person so dying, resigning, refusing or being able (unable) to act, and the person then appointed shall be vested with rights and interests in said property, and shall have the same powers to act therein as the one so originally named. And so on, thereafter, whenever a vacancy occurs in said trusteeship for any of the causes hereinbefore named, then the two remaining trustees shall select a new trustee to fill the vacancy thus caused, who shall in like manner be vested with all the rights and interests, and all the powers and duties of a trustee originally named herein; but if a vacancy occurs in either of the other two trusteeships for any of the causes hereinbefore stated, then the trustee, in place of said Charles Parsons, if this place becomes vacant, shall be appointed in writing by the National Bank of Commerce, in St. Louis, the Laclede National Bank of St. Louis, the National Bank of the Republic of St. Louis, and the State Bank of St. Louis, or a majority of them in interest, and the trustee in the place of Frederick M. Blount, if his place becomes vacant, shall be appointed in writing by John H. Witbeck, or a majority of them in interest. And said several appointments shall be duly acknowledged and filed of record, and thereupon the several new trustees shall be vested with all the powers and interests, the same, as above expressed, as to the trustee to be appointed by the two remaining trustees; and this provision shall extend to each successor of either of said two trustees herein last named, until the trust hereunder is fully executed and completed.

All books and papers in the hands of said trustee relating to said trust shall always be open to the inspection of any of the said *cestuis que trust* or their attorneys. And the grantors hereby waive all homestead exemption rights given them or either of them by the laws of Illinois.

In witness whereof, the said grantors have hereunto set their hands and seals, said corporations named as grantors executed the same in their corporate names and with their corporate seals, duly attested, this 17th day of August, eighteen hundred and ninety-five.'

And the court having carefully examined said petition, exhibits and proofs adduced in open court, doth find that two hundred and forty-eight (248) out of the two hundred and sixty-two (262) general and unsecured creditors, who have filed their claim against said insolvent estate, representing one hundred and sixty-eight thousand sixty and

10-100 dollars ($168,060.10), of said claims out of a total of one hundred and seventy thousand ten and 84-100 dollars ($170,010.84), so filed, have signed said creditor's agreement.

The court doth further find from the proof that the facts set forth in the petition are true.

And it appearing to the court that it is for the best interest of all creditors of the said Henry Seiter to carry out the provisions of the said creditor's agreement and the proposed compromise, and that it is for the best interests of the said creditors for the petitioners, as assignee, to join the execution of the said deed of trust, and such other papers as may be necessary from time to time for the purposes mentioned in said petition.

And the court being fully advised in the premises, doth order, adjudge and decree that upon the execution and delivery by the St. Louis banks named in the petition, and the said John H. Witbeck and others (styled in the said petition as the Chicago bondsmen) of releases, releasing all their rights or claim of participation they have or may have in the remaining assets in the hands of the assignee of the said Henry Seiter, by reason of their having filed their claims with the petitioner as assignee, as provided in the said creditors' agreement, Exhibit A, and deed of trust, Exhibit B.

And upon the payment or securing the payment by said trustees to the said Marshall W. Weir, as assignee, as aforesaid, of the sum of twenty thousand seven hundred thirty-six and 55-100 dollars ($20,736.55) on or before the first day of January, 1896, as provided in said Exhibits A and B, the said Marshall W. Weir, as such assignee, is hereby authorized and directed to join in the execution of said trust deed Exhibit B, and transfer and convey to the trustees named in said trust deed, or their successors, all their right, title and equity of redemption in and to all property, real and personal, named and described in the said trust deed, and held or claimed to be held as collateral security by the said St. Louis banks, Chicago bondsmen, and the Equitable Trust Company, of Chicago; that he shall assign and transfer and release to said persons and corporations, holding the same as collateral, all his interest and equity of redemption as assignee in and to all the notes of the Illinois Farm Company, the shares of stock of said corporation, and of the Lebanon Dairy and Creamery Company, as well as in all other collaterals of every kind, real and personal, hypothecated by said Henry Seiter and held or claimed to be

held by said Chicago bondsmen, said Equitable Trust Company and said St. Louis banks.

It is further ordered, adjudged and decreed by the court that the said Marshall W. Weir, as assignee as aforesaid, be and he is hereby authorized to execute and deliver from time to time, as the same may· be necessary, all such other papers and instruments or conveyances to vest the title to said property in the trustees' name, and more fully described in said trust deed, and the collaterals to be assigned by the Chicago bondsmen, the Equitable Trust Company of Chicago, and the St. Louis banks, free of any claim of the said Marshall W. Weir, as assignee aforesaid, or of the creditors of the said Henry Seiter, insolvent.

And that upon the receipt or securing to him the payment of the $20,736.55 of overdrafts from the Illinois Farm Company and Lebanon Dairy and Creamery Company, he shall execute receipts and acquittances in full therefor.

It is further ordered, adjudged and decreed that the said Marshall W. Weir, as such assignee, is hereby authorized, empowered and directed to dismiss all suits at law or in equity, commenced by him and now pending against the said Lebanon Dairy and Creamery Company, the Equitable Trust Company and others, affecting the title to the properties embraced in the said trust deed, and may consent to a decree being rendered in the chancery case now pending on original bill of petitioner or cross-bill of John H. Witbeck and others, in order to perfect the title to said properties, both real and personal, in the trustees, if deemed advisable so to do.

And it is further ordered, adjudged and decreed by the court that the said Marshall W. Weir, as assignee aforesaid, may do and perform all such acts as may be required of him or necessary to carry out the provisions of the said creditor's agreement, etc., and of this order."

On the seventeenth of August, 1895, the lands in controversy in this case were conveyed by Henry Seiter and wife, the Lebanon Dairy and Creamery Company, and Marshall W. Weir, assignee, to the trustees, Parsons, Blount and Sexton, in pursuance of the creditor's agreement. On the . same date the widow and heirs of Rufus N. Ramsay conveyed to the trustees the lands that Seiter had theretofore conveyed to Ramsay, to secure the $50,000 loaned by Ramsay to Seiter.

The overdrafts of the Illinois Land Company and the Lebanon Dairy and Creamery Company, amounting in the aggregate to $20,736.55, were paid to Weir, assignee, within the time specified in the agreement, the money having been advanced therefor by the said H. P. Rogers, Edward Rogers and A. F. Rogers.

On the hearing of the case in the court below, the court dismissed the bill of Taylor, at his costs, and also dismissed the intervening petitions, at the petitioners' cost, and Taylor and the intervenors have severally appealed from the order of dismissal to this court.

WINKELMAN & BAER, R. N. HORNER, TURNER & HOLDER, DILL & WILDERMAN and FRED. B. MERRILLS, attorneys for appellants.

NOBLE & SHIELDS and FORMAN & BROWNING, attorneys for appellees.

MR. JUSTICE BIGELOW delivered the opinion of the court.

The errors assigned on the record question the correctness of the order of the Circuit Court in dismissing appellant Taylor's amended bill and in dismissing the several intervenors' petitions, and refusing to grant the relief prayed for.

The case has been ably argued by the numerous counsel engaged in it, but so far as we can see from the arguments but two questions are presented to us for consideration. One question concerns the deed of Henry Seiter and wife, of July 22, 1894, to the Lebanon Dairy and Creamery Company, covering the lands sought to be reached by the bill in this case.

The other question concerns the validity of Seiter's original deed of assignment, as supposed to be affected by the creditors' agreement and the order of the County Court, with the conveyances made to the trustees, Parsons, Blount and Sexton.

As a large portion of the arguments of counsel for appellants has relation solely to the deed of the lands made by

Seiter and wife to the Lebanon Dairy and Creamery Company, we do not choose to pass the arguments by unnoticed, for, although we are of the opinion that the fact whether the deed was delivered or not, has little, if anything, to do with the case, we are fully aware, from the earnestness of the various arguments of counsel for appellants, that the point is made in the utmost faith, that if the deed was not delivered before Seiter made his assignment the land was open to seizure by appellants in the manner adopted by them.

It is claimed by appellants that all of Seiter's original stock of the creamery company was unpaid for by him. All of the evidence in the record on that point is to the effect that this claim is entirely without foundation. But suppose nothing had been paid on it; how does that affect either the appellants or the appellees? We are unable to see how either party can be affected by such a fact, so far as the title to the land in this case is concerned. It is a fact undisputed by any evidence in the record that when the stock of the creamery company was increased by a further issue of $65,000, Seiter subscribed for and took the entire 650 shares, and he agreed to pay for it by conveying to the creamery company the land sought to be reached by the bill in this case; that immediately on the issuance of the stock, he, with his wife, made and acknowledged a deed for the land to the creamery company, and he testified that as grantor he delivered the deed to himself as president of the creamery company, and there is no evidence to the contrary; but, as he further testified that the reason he did not have the deed recorded at once was because he had previously deeded a part of the land to Rufus N. Ramsay to secure a loan of money he had made from Ramsay, and that while he had given to Ramsay other collateral security to secure the loan in place of the deed of the land, he had not yet received the deed from Ramsay, and for this reason he withheld his deed to the creamery company from record until the day he made his assignment to Weir, which was five months after the date of the deed

to the creamery company, this testimony is construed by counsel for appellants as meaning that Seiter was acting in his private capacity in withholding the deed from a complete delivery, and this may be correct; but whether it is or not we express no opinion. It is clear from the evidence that the creamery company had purchased the land and had paid for it all that it is alleged in the bill in this case to have been worth. Under such circumstances, if Seiter had scheduled the land in his assignment as his property and the assignee had inventoried it as assigned property, the assignee could not have held it as assets of the assigned estate, against the creamery company, in a proceeding against the assignee to specifically enforce the contract for a deed, made by Seiter, as the uncontradicted evidence is that the creamery company was in possession of the land under the contract of purchase at the time Seiter made his assignment.

Under such circumstances, where no actual fraud is shown, should a court of chancery decree a sale of the property to pay Seiter's creditors, or should it presume that as done which ought to have been done, and refuse any relief whatever because of the manifest unjustness in taking the property of one who had honestly purchased and paid for it, and is in possession of it, to pay the debts of another, even though the " another " happens to be the person from whom the property was purchased? It would at least seem that justice would require that a presumption should take the place of a missing fact in such a case. But since, in our opinion, no such presumption needs to be indulged in this case, because of the fact that before any of appellants had recovered judgment against Seiter, on which the bill in this case was founded, and before any proceedings were begun by any of appellants to subject the land to the payment of any of their judgments, the title to the land and the dominion over it had passed into the assignment, where appellants concede it should have gone, on the filing of the deed of assignment for record, therefore we express no opinion in the matter whether there was a valid delivery of the deed

Taylor v. Seiter.

to the creamery company before Seiter contemplated making an assignment, or whether, from the undisputed facts, the presumption should be indulged that the deed was delivered before the assignment was contemplated by Seiter.

No question is raised as to the terms contained in the deed of assignment made by Seiter to Weir. It is not pretended that it contained provisions which would make it fraudulent in law, such as were contained in Hardin v. Osborne, 60 Ill. 93; Gardner v. Commercial National Bank, 95 Ill. 298; or Bowen v. Parkhurst, 24 Ill. 257. For anything appearing in the record, the deed of assignment executed by Seiter on December 10, 1894, was a general assignment for the benefit of all creditors, without reservations in his own favor, and free from any powers in favor of the assignee other than are contained in the statutes regulating assignments for the benefit of creditors. When the deed was delivered to the assignee, Seiter thereby completely relinquished his dominion over his property; it was then beyond his power, either by his acts or by his purposes, to invalidate the assignment he had made. After the delivery of the deed, all such property, both in law and in equity, as in the judgment of the law was within the operation of the deed of assignment, became subject to the jurisdiction of the County Court. Freydendall v. Baldwin, 103 Ill. 325; Feltenstein v. Stein, 157 Ill. 19.

Any agreement, however fraudulent, concerning the assigned estate, made between any or all of its creditors, and any orders made by the County Court in the administration of the estate, no matter how wrong or erroneous, can neither as a question of law or fact, be deemed the act of Seiter. The creditors' agreement appointing the three trustees to manage the property assigned to Weir, was in substance and in fact an administrative order of partial distribution rendered by the County Court. That this agreement-order contains provisions which would render a deed of assignment for the benefit of creditors void, may be admitted; but the agreement-order is not the act of Seiter. It was probably never contemplated by him when he made

his assignment that his property should be administered as provided in such order; but whether this conjecture is true or not, this agreement-order of August 17, 1895, made months afterward, can not be held to invalidate the assignment which Seiter created without taint or blemish in its inception; and therefore the first above quoted decisions are not applicable. The error in counsel's argument lies in the tacit assumption that the agreement-order is in some way the act of Seiter. Such an agreement entered into between some of the creditors would not bind other creditors, who had proved their claims before the assignee, nor would the agreement be binding on the court. But once the court sanctioned such an arrangement, it became in substance a decree of the court in the administration of the estate that must be appealed from at the proper time, by any person who was a party to the assignment and who considers himself injured thereby; not to appeal is to be concluded by the rule of *res judicata* as to all property embraced within the assignment, no matter how erroneous the order may be as measured by the assignment statute and the adjudication of the courts in interpretation thereof. But appellant Taylor never filed his claim with the assignee; as to all property under the dominion of the County Court he is a stranger. It does not lie in his power by means of a creditor's bill to draw in question the legality of the agreement-order entered under the direction of the County Court.

Unless Seiter's deed of assignment of December 10, 1894, was fraudulent in its inception, no claimed wrongs committed afterward by his creditors or his estate, or claimed improvident orders of the County Court in pursuance of such wrongs, can be of avail to appellant Taylor on his creditor's bill; for the theory of such a bill is the fraudulent purpose or effect of the grantor's deed to hinder and delay his creditors in the collection of their claims, a state that can not exist with an assignment made as the law directs. Feltenstein v. Stein, *supra;* Weir v. Mowe, 182 Ill. 444.

If the assigned estate is not administered by the County

Taylor v. Seiter.

Court in conformity to law, the remedy is to compel the execution of the trust, according to law, and the intent of the assignor as expressed in his valid deed. To allow a creditor's bill or an attachment to be levied on property which has already been assigned by a valid deed of assignment, either because the assignee is colluding with some creditors for a preference or because the County Court enters erroneous orders in the distribution of the estate, would be for one set of laws to nullify what another set of laws has created.

We do not say that either the creditors or the assignee or the County Court did any wrong in fact by the agreement-order of August 17, 1895; it may have been a proper thing to do; but it can not be tolerated that such intervenors in this case as filed their claims with the assignee and received dividends from the assigned estate be permitted at the same time to enjoy the benefits of the assignment and to assail it by creditor's bills. So strongly has this principle been enforced that in a case where the deed of assignment itself was void on its face, the court held the creditor, who by some significant act has made himself a party to the assignment, may not take any steps to impair its validity. Rapalee v. Steward, 27 N. Y. 310.

So far as appellant Taylor is concerned, his position is consistent all the way through; but not having filed his claim with the assignee, he can in no way challenge or assail the distribution of the assets of the estate; he is not a *cestui que trust* of the assigned estate.

The question then arises: what does the assigned estate consist of under the rules of the law, and what does the evidence in this case show to have been done to bring Seiter's property rights now in contention by this bill, under the operation of the assignment running in the County Court?

As to the lands in question, we do not deem it important to determine whether there was a preference created by Seiter's deed to the creamery company when he made the assignment, or whether the deed was void for want of

delivery, or whether the outstanding deed from Seiter to
Ramsay was fraudulent; or whether Seiter could have com-
pelled the Ramsay heirs to reconvey the lands to him,
because the deed was a lawful conveyance by him to Ram-
say, to secure a lawful debt, which had been paid so that
the equitable title resulted to Seiter.   Disregarding for the
moment the outstanding deed from Seiter to Ramsay, it is
too plain for discussion that if the deed to the creamery
company was void for want of delivery, then the lands
were still Seiter's, and they passed to the assignee by vir-
tue of the deed of assignment; and it is equally plain that
if Seiter could have compelled the Ramsay heirs to recon-
vey the lands to him, then the equity title of Seiter to the
lands would also pass by the deed of assignment to Weir;
and adopting, by analogy of reasoning, the distinction made
between a fraudulent conveyance and a preference, as
pointed out in Ahlgren v. Huntington, 85 Ill. App. 639, we
see no reason why the assignee should not be the very party
to call in the legal title from the Ramsay heirs. (See Pres-
ton v. Spalding, 120 Ill. 208; Davis et al. v. Chicago Dock
Co., 129 Ill. 180.) We are of opinion that the decision in
Bouton v. Dement, 122 Ill. 143, is not applicable to this
case; but it is not important to determine whether the
assignee or the creditors of the estate were the proper par-
ties to initiate such a proceeding, for reasons to be here-
after stated.

The frictional point of this controversy is found in appel-
lant's contention that by reason of the fact (a matter that
we do not pass upon) that Seiter borrowed state money
from Ramsay as state treasurer, and gave a deed as secu-
rity for the return of such money, such deed was a mere
voluntary conveyance by Seiter to Ramsay, in that the
consideration was illegal and void, as determined by the
Supreme Court in Witbeck v. Estate of Ramsay, 183 Ill.
550; and it is further urged that by reason of such volun-
tary conveyance by Seiter to Ramsay, the deed is conclu-
sively fraudulent, and that therefore Seiter's deed of assign-
ment could not operate upon a prior fraudulent transfe for

Taylor v. Seiter.

the lands, and that inasmuch as the creditors of Seiter, who proved their claims before the assignee, have taken no legal steps to set aside this fraudulent conveyance and bring the property within the operation of the assignment before appellant filed his bill, therefore he has acquired a lien on the lands by virtue of his creditor's bill.

We are not prepared to say whether the Chicago creditors occupy the same position in reference to Seiter's assigned estate that they have been adjudged to occupy in reference to Ramsay's estate.

If it should be admitted that the claims of the Chicago creditors are merely spurious debts, it by no means follows that the assignment itself will not be sustained for the benefit of creditors whose debts are *bona fide.* There is no evidence that Seiter intended any portion of his property for the Chicago creditors; if they are creditors of the estate at all, it is on the principle of subrogation in having paid Ramsay's debt to the State, and thereby succeeding to the collaterals which Ramsay held against Seiter. In the event that in the judgment of the law, the Chicago creditors shall, as against Seiter's estate, be deemed no creditors at all, such fact would not be proof of a fraudulent intent of Seiter when he made his deed; he may still have believed that the debts which he owed Ramsay's estate were good in law, for as a matter of fact he owed Ramsay's estate for the state money he had borrowed. But even if we are wrong in this view of the matter, the rule of law on the particular point now adverted to is stated by Burrill in his work on assignments, section 82, and is as follows: " The preponderance of authority seems to be in favor of the opinion that the assignment will be held good as to all debts that are *bona fide;* and this rule would undoubtedly prevail in those states where provision is made by statute for testing the validity of the claims presented to the assignee for payment under the assignment, citing Macintosh v. Corner, 33 Md. 607; Hempstead v. Johnston, 18 Ark. 137; Hardcastle v. Fisher, 24 Mo. 75. Ample provision for such a test is found in sections four and five of our assignment law.

Should it be admitted that the Chicago creditors hold spurious claims, the fact remains that there are still creditors, exclusive of the Chicago parties, whose claims are *bona fide*, and who before the 17th of August, 1895, had proved up their claims before the assignee. By such proof of claims their rights in the estate became vested. (Levy v. Chicago National Bank, 158 Ill. 88; Weir v. Mowe, 182 Ill. 444.) The record fails to show the exact amount of admittedly valid claims proved up before the assignee; certain it is, that the St. Louis banks were among these *bona fide* creditors, and that their claims alone amounted to more than $106,000. That these creditors could, by the institution of legal proceedings, have compelled the claimed fraudulent conveyance to Ramsay to be set aside for the benefit of the assigned estate, does not admit of discussion (Hinckley v. Reed, 182 Ill. 440), provided such legal steps were taken before appellant filed his bill. If before the filing of such a bill, Ramsay's heirs have, without legal compulsion, yielded up by their deed to Seiter's assignee, property which was fraudulently conveyed to their ancestor, then such act simply puts the property into its proper channel. The Seiter creditors, who hold *bona fide* claims, had an equitable remedy to compel the Ramsay heirs to put the property where it belonged, even though Seiter's assignee was powerless to do so. If the lands reconveyed by the Ramsay heirs, came to a lawful resting place, it can not make any difference whether it came there with or without legal proceedings, nor whether a proper or an improper party took the initiative to bring it within the operation of Seiter's assignment.

Did, then, the land come to the hand of the assignee before appellant filed his bill? It did in substance, if not in form. It is true that the lands were not conveyed directly by Ramsay's heirs to Weir, the assignee, but such was the transaction by legal intendment. We view the transaction to be the same as if the Ramsay heirs had deeded the land to Weir, the assignee, and he in turn, by direction of the County Court, had deeded them to the three trustees, in

conformity to the order of partial distribution, of August 17, 1895.

The method adopted saved the trouble and expense of making and recording an extra deed. If the act of the Ramsay heirs in deeding these lands to the trustees, had not had the sanction of the County Court, there would be much force in appellant's contention that the lands are still in the hands of the trustees, tainted with the claimed fraudulent conveyance between Seiter and Ramsay; and so it must be held, that all of Seiter's property which came rightfully into the assignment, no matter by what instrumentality, and which is now being administered by the County Court, is withdrawn from all ordinary remedies at law or in equity, which belong to creditors who do not file their claims.

For anything that appears in this bill, it might, irrespective of the claims of the Chicago creditors, have taken every dollar of property which has come into the assignment, to pay all *bona fide* claims in full; and if *bona fide* creditors have agreed to share the estate with those who are no creditors at all, that must be their concern.

If, however, it shall appear that in the assigned estate there is more than enough to pay the admittedly valid claims filed against it, and that such excess is in danger of being dissipated in payment of illegal or fictitious claims, then, if equity affords a remedy to such of appellants as have not filed their claims with the assignee, it is plain that such remedy will have to respect the assignment in the County Court, and the powers of the assignee there, and be confined to purging the trust fund of such alleged fictitious or illegal claims upon it. That question is not before us on this record and we express no opinion concerning it.

The action of the Circuit Court being in accordance with the views herein expressed, the decree dismissing the bill and the petition of the intervenors is affirmed.